## ROBINSON v. HALL et al.

(Circuit Court, E. D. North Carolina. January 4, 1894.)

### No. 11.

1. **NATIONAL BANKS—INSOLVENCY—DIRECTORS—PERSONAL LIABILITY.**
    Directors will not be held personally liable for losses except in cases of active or passive fraud or extreme negligence.

2. **SAME—PLEADING—NEGLIGENCE.**
    An allegation that the directors "permitted" loans to be made to one person in excess of 10 per cent. of the bank's capital is not equivalent to an averment that they knowingly permitted it, or that they could have ascertained the existence thereof by an examination of the books, and is insufficient to charge them with personal liability for resulting losses.

3. **SAME—EQUITY JURISDICTION.**
    An allegation that a director withdrew $1,000 from the bank, after knowledge of its insolvency, and immediately before its suspension, states a matter rendering him liable to an action at law, but is not a matter of equity jurisdiction, and cannot be considered in an equity suit to charge him with personal liability.

4. **SAME—DUTIES OF DIRECTORS—CONCEALING BANK'S EMBARRASSMENT.**
    It is no ground of personal liability, or even of censure, that directors, knowing of the bank's embarrassment, conceal the fact from creditors; for such is their duty, unless the embarrassment is such as to imperatively demand suspension.

5. **SAME—REQUIRING BONDS OF OFFICERS.**
    Directors have a discretion, under Rev. St. § 5136, whether or not to require bonds of their officers; and the omission to take a bond of a cashier who is a man of good repute and character, and of some visible property, does not of itself render them personally liable for losses caused by his misconduct.

In Equity. Bill by W. S. O'B. Robinson, receiver of the First National Bank of Wilmington, N. C., against B. F. Hall, James Sprunt, D. G. Worth, G. Herbert Smith, and James H. Chadbourn, directors of said bank, to charge them with personal liability for certain losses alleged to have occurred through their negligence. Heard on demurrer to the bill. Sustained, and bill dismissed.

Daniel L. Russell, for complainant.

Marsden Bellamy, Junius Davis, E. S. Martin, Ricaud & Weill, and Du Brutz Cutlar, for defendant.

SEYMOUR, District Judge. This is a bill brought by the receiver of a national bank against its directors, one of whom was also its president, calling them to account for alleged negligence. It is heard upon demurrer. All the allegations, distinctly made by the bill as amended, are to be considered as true, and the question to be answered is whether, upon his own showing, plaintiff has made a case for equitable relief.

The extent of the duty owing by national bank directors to their banks and to the creditors of such banks has not been accurately ascertained. Directors are not trustees, or insurers of the fidelity of the agents appointed by them. On the other hand, they are undoubtedly liable if personally guilty of fraud, or if they connive in the fraud of others, or permit it by criminal neglect of duty. They are also liable for failure to give ordinary attention to their

official duties. What the ordinary attention required of them may be is the question that remains to some extent undetermined. "The degree of care required," says Fuller, C. J., in Briggs v. Spaulding, 141 U. S. 132, 11 Sup. Ct. 924, "depends upon the subject to which it is to be applied, and each case has to be determined in view of all the circumstances." "One must be very careful, in administering the law of joint-stock companies, not to press so hard on honest directors as to make them liable for constructive defaults, the only effect of which would be to deter all men of any property, and perhaps all men who have any character to lose, from becoming directors of companies at all. On the one hand, I think the court should do its utmost to bring fraudulent directors to account, and, on the other hand, should also do its best to allow honest men to act reasonably as directors." Sir George Jessell, in Re Forest of Dean Coal Min. Co., 10 Ch. Div. 450, 451, cited by Fuller, C. J., in Briggs v. Spaulding, supra.

Directors are not required to manage the affairs of their banks personally. Rev. St. § 5136, subd. 8. The powers given them by the legislature are, to appoint officers of their banks, define their duties, fix the amount of their bonds, when bonds are required, and prescribe by-laws. Id. subds. 6, 7. They may also be directed, presumably by their by-laws, to personally exercise such incidental powers as shall be necessary to carry on the business of banking, or such powers may be exercised by the duly-authorized officers of the bank. Id. subd. 8. They are not required to reside at the bank's place of business, although they must live in the same state. Unpaid, and usually engaged in other occupations, they are not expected to give any large portion of their time to their duties as directors. The paid officers of the bank are hired to attend to its business, and intrusted with all its details. In practice, directors usually have periodical times of meeting, when they discuss the bank's business, and perhaps personally, or as members of a committee appointed for that purpose, pass upon paper offered for discount. Usually, however, the matter of ordinary discounts is intrusted to either the president or cashier, or both. Directors are deemed to have done their duty if they select officers reputed to be competent and trustworthy, and exercise a very general supervision over them. Courts will not ordinarily give relief against directors to the extent of holding them personally liable, unless in cases of active or passive fraud or extreme negligence. Mere neglect to fully inform themselves of the affairs of the bank, even to the extent that they could be ascertained by an inspection of its books, is not held to be gross negligence, unless, perhaps, in cases where grounds of suspicion of the good conduct of their officers exist, and have come to their knowledge, or may reasonably be supposed to have been known to them. They are pecuniarily interested as stockholders in the faithful conduct of their officers, and it would be considered unjust for any slight reason to hold them further liable to what in many cases would be the total ruin, by liability for the losses of the bank in case of its failure.

In the case before us, there is no charge of fraudulent acts com-

mitted by the directors. I pass over the allegation that defendant Smith withdrew $1,000 from the bank after becoming acquainted with its insolvency, and immediately before its suspension. This, if true, renders him liable for an action at law to recover such payment on the part of the receiver, but it is not a subject of equity jurisdiction.

Some general charges are made against the directors which do not profess, in the form in which they are stated, to be causes of equitable interference. That the defendants, although knowing of the bank's embarrassment for some months before its failure, carefully concealed the fact from creditors, is not ground of censure. Such was their duty, if the embarrassment was not such as to imperatively demand the bank's suspension. The averment that defendants withdrew a large part of their balances from the bank before its failure· is too indefinite in its statement of time to be worthy of serious consideration. They knew that the bank was embarrassed some months before its failure, the bill says. The only averment that gives dates is one which compares their balances a year previous to the failure with those at its date. Whether, in a forum of conscience, it should be held that the duty of a bank director, as does that of the captain of a vessel, requires him to be the last one to leave his ship, need not be considered; nor need I notice what the bill seems to state, but does not, that defendants informed certain favored creditors and stockholders of the financial condition of the bank.

I come to the averments relied upon by plaintiff; viz. that the directors are liable because they failed to require Bowden, the cashier, to give bond; because they did not immediately upon the bank's suspension record three mortgages held by it, and because they permitted two loans to be made in excess of 10 per cent. of the bank's capital. All of these defaults, it is claimed, resulted in loss to the bank, and for the full amount of such losses the bill asks that the directors be held liable.

1. An examination of the facts connected with the defalcations of Bowden, the cashier, shows that there was nothing in them that would have been likely to have attracted the attention of the directors. The total capital of the bank—$250,000—was in some way dissipated. An assessment on stockholders of 100 per cent. is required, in addition, to make good the bank's losses. The amount that Bowden took was $9,783.90; and it was taken in such a way as apparently not to give an easy opportunity for detection. In February, 1889, Bowden paid one Field a debt owing to him by himself, by crediting him with the sum of $2,320 on his amount in the bank, without drawing his own check for the amount. A similar transaction took place in July, 1889, the amount this time being $2,170. In April, 1889, and in November, 1890, Bowden let one Ford have, in the aggregate, $3,000 bank money, as a loan, and took the notes and accompanying mortgages in his own name. In May, 1891, Bowden, having received a·check for $15,312.79 from a third party to pay a judgment of $14,000 and an overdraft of $1,312.79 due by the Pine Fibre Company to the bank, paid the judgment, and appropri-

ated the amount that should have been applied to the overdraft. It is not claimed that any of these transactions were known to any of the defendants, or that there were any circumstances that should have attracted their attention to them. Plaintiff's contention is that defendants are liable simply because they had required no bond from him. The proposition, therefore, is that, in every case in which a bond is not required by directors from an officer of a national bank, the former are responsible for any loss caused by his conduct; in other words, the directors, by not taking a bond, became themselves the bondsmen of the officer.

But the statute (Rev. St. 5136) does not require them to take bonds of their officers; it only empowers them to, wisely leaving the matter to their sound discretion. The question of whether directors are liable for failure to require a bond from a cashier was raised by the pleadings in Briggs v. Spaulding, supra, and was alluded to by the chief justice. If plaintiff's contention be correct, that circumstance, of itself, would have been sufficient to have made the defendants in Briggs v. Spaulding liable to the losses arising from the cashier's misconduct. It was not overlooked, and judgment went in favor of all the defendants. Nor was the omission to require such bond mentioned as ground of dissent in the opinion of the minority of the court. Holding that the directors are vested with sound discretion in the matter of requiring, or not, the officers of their bank to give bond, I will consider whether there was anything to call especially for such a requirement to be made of Bowden. The only reasons for doing so alleged, are that he was largely indebted to the bank, and not possessed of any considerable property. I suppose the large indebtedness spoken of is the $9,783.90 already discussed. No other is charged in the bill to have existed. And of this indebtedness, it is apparent, the directors were not informed. How much property Bowden possessed does not appear. It is fair to take the averment of his inconsiderable means as an admission that he was a person possessed of some visible estate. As the contrary is not alleged, we may suppose him, before the failure of the bank, to have been a man of good repute and character. If the contrary were true, it would have been the duty of the directors, not simply to have required a bond, but to have discharged him. Under the circumstances alleged in the bill, I see no special reason for requiring a bond from him.

2. Three several mortgages, from different parties, had, by arrangement, been allowed to remain unrecorded. The bank suspended on the 24th of November, 1891. Plaintiff avers that it was the duty of the directors, immediately upon such suspension, to have recorded such mortgages, and that they are liable for losses accruing from their failure to do so. But the bank was put in the hands of an examiner by the comptroller of the currency on the 26th of November, as appears by the second article of the amended bill, and the court takes note of the fact that the 25th of November, 1891, was a national holiday. Furthermore, while the bill states that about $6,000 was lost to the bank by reason of sundry dispositions made of part of the mortgaged property after the bank

failed, it does not state that such dispositions were made on either the 24th, 25th, or 26th of November, the only days during any parts of which the directors had control after the suspension of the bank.

3. It is averred that defendants permitted loans to be made in excess of 10 per cent. of the bank capital to two different persons, and that the bank will lose not less than $40,000 on such loans. But the permission spoken of seems to have been purely constructive. There is no allegation that defendants knew that such loans had been made, or could have ascertained, by an examination of the books of the bank, their existence, or the fact that they exceeded the permitted percentage of bank capital, or that there was any negligence on their part of any kind. No fact appears in the bill which would fix these defendants with liability for this violation of Rev. St. § 5200. The word "permitted," as used by a pleader, cannot be construed to include knowledge.

This, as I have said, is not a case in which fraudulent conduct is imputed to the defendants. As far as appears from the bill, the defendants may have given reasonable care and attention to the management of the bank. The refusal to require a bond of their cashier was a matter purely of discretion. That they attended to the subject is evident from the fact that they required bonds from some of their officers, and did not from others. If the failure to record the mortgages could be considered an error, it was evidently an inadvertence,—a mere failure, during a period of excitement, to attend to a matter of detail; what is called in admiralty an error "in extremis," which is not counted as a fault. The loans in excess of the percentage allowed were not brought to their knowledge.

In the recent case of Briggs v. Spaulding, supra, it appeared that the directors of an insolvent national bank had held no meetings for years, exercised no supervision over the business or officers of the bank, and permitted it to be wrecked by a cashier from whom they had required no bond. Special circumstances were pleaded for each of the defendants,—illness, absence from the country, short term of service of the recently appointed directors,—and the pleas were accepted. I call attention to the case, not because it decides this one, but for the reason that it seems to me a much stronger case of negligence than is averred here, and because it illustrates the amount of care required from the directors of these institutions, and the reasonable excuses admitted for failure to detect the criminal conduct of their officers. In the present case, to hold defendants liable would, it seems to me, be to lay down the obligations of bank directors with a stringency not only inconsistent with the recent adjudication of the supreme court, but inconsistent with the possibility of securing the services of competent and prudent men as directors. I have not thought it necessary to consider the objections made to the bill as a pleading. Without expressing any opinion upon its sufficiency in form or statement, I hold that, upon the merits of the case stated by the bill, the demurrer must be sustained, and the bill dismissed.