ALBERT CORNICK, Appellant, v. H. C. WEIR et al., Appellees.

No. 40491.

716

JUNE 20, 1931.

J. V. Gray and Sam Abramson, for appellee H. C. Weir.

McCoid, McCoid & McCoid, for appellees, H. A. Geeseka and F. B. Montgomery.

McAdam & Nelson, for appellees, D. Skipton, James Bates and H. Hazen.

McCoid, McCoid & McCoid, and Paul B. Galer, for appellee, R. S. Galer.

F. S. Finley, Max Kinney, and B. I. Salinger, for appellant, Albert Cornick.

GRIMM, J.—The pleadings in this case are long and much involved. We will endeavor to very briefly set forth the controversy between the parties.

For many years, the plaintiff has been a resident of Henry County, Iowa, and a patron of the former Farmers & Merchants Savings Bank of Mt. Pleasant, Iowa. For a period of time prior to January, 1924, the plaintiff and his brother were in partnership and as such deposited with said bank $17,000.00 of Fourth Liberty Loan Coupon Bonds of the United States. It appears that later, and about the 16th of March, 1928, the partnership was dissolved and these bonds became the property of the plaintiff. The bank issued a certificate or receipt for these bonds.

The original petition is in three counts, and asks for $17,510.00, with interest at 6% from January 10, 1924. Various motions and demurrers were filed and ruled upon and later on the 15th of May, 1929, an "amended and substituted petition" was filed, consisting of four counts, and later, on the 18th of October, 1929, plaintiff filed his first amendment to the amended and substituted petition, as Count 5.

Very briefly stated, it is the claim of the plaintiff that these bonds which were deposited by the plaintiff with the bank were used by the bank as collateral to a note given by the bank, for money borrowed from a bank in New York. The said Farmers & Merchants Savings Bank closed its doors May 14, 1924, and went into the hands of a receiver. The loan to which the bonds were pledged as collateral was made January 5, 1924, and consisted of borrowing from a New York bank the sum of $30,000.00. The New York bank retained the bonds as security on its loan.

In passing, we may say that a very large majority of the appellant's errors relied upon for reversal utterly fail to comply with the rules of this court. This question of complying with the rules has been dealt with so often in recent opinions that we refuse at this time to encumber the reports with a discussion of the subject generally and as applied to this particular case. In light of the manner in which the appellant has disregarded the rules of this court, we will not attempt to answer his claims

by number or otherwise, except to pass upon the important points upon which the case depends.

When finally analyzed, there are found but two real pivotal questions in the case. The first one is whether the directors of the bank, who are the defendants herein, are liable to the plaintiff upon the general basis of negligence in connection with the performance of their duties as directors of the bank. The second question is whether the amendment referred to as Count 5 of the amended and substituted petition, in which said Count 5 the defendants are charged with having personally converted the bonds, is a separate cause of action from that set out in the other counts of the amended and substituted petition, and, if so, it was filed too late and is barred.

We will consider Count 5 first.

I. In the original petition filed April 23, 1928, there were three counts. In the first one, it is claimed generally that the bank (not the defendants) executed a note to the Chase National Bank of New York City for $30,000.00 and converted the plaintiff's bonds by pledging the same to the Chase National Bank as security for the payment of said $30,000.00 note.

It is alleged in substance in said first count that the bank was in the habit of using customers' bonds as collateral security to loans made by the bank and that the defendants knew said bonds were being used as security to the Chase National Bank.

In Count 3 of the said original petition, it is charged, in substance, that the defendants failed and refused to recall said bonds and return the same to the plaintiff and that said failure constituted a ratification on the part of the defendants of the acts of the bank.

Count 2 of said original petition is a direct allegation that the *defendants* on the 5th of January, 1924, executed a note to the Chase National Bank and pledged said bonds as security for the payment thereof.

It is unnecessary to encumber the reports with the numerous motions and demurrers which were argued on the part of the various parties to the action. Suffice it to say that when the amended and substituted petition was filed, it did not contain any count which corresponded to Count 2 of the original petition; that is to say, there was no charge that the *defendants* executed the note and converted the bonds.

The amended and substituted petition was filed on May 15, 1929. It contained four counts, but they all pertained to the general claim that the defendants were *negligent* as directors of the bank in permitting the bank to convert the bonds and none of said four counts definitely charged the defendants with having borrowed the money from the Chase National Bank nor having pledged plaintiff's bonds as security for the payment of said loan and it was not until October 18, 1929, that Count 5 of the amended and substituted petition was filed as an amendment thereto, in which said count the defendants were charged with having borrowed the money and having pledged the security.

The original four counts of the amended and substituted petition are quite lengthy. It is claimed that the bank had been in the habit for many years of accepting Government Bonds from customers and clients for safe keeping and that the bank had been using said bonds as collateral security in securing loans from its correspondents. It is alleged that the defendants knew of this custom or that they were in possession of facts which, if pursued, would have given them full knowledge of said practice of using said bonds, but the said original four counts of the amended and substituted petition contains no claim whatsoever that the defendants had borrowed $30,000.00 from the Chase National Bank and used the bonds of the plaintiff as collateral security for the payment of said loan.

While variously stated in different parts of the substituted petition, the net result is a pleading on the part of the plaintiff in the alternative, claiming, in substance, that defendants knew or, by the exercise of proper diligence, should have known that the custom of using patrons' bonds as collateral was in effect and that the defendants knew, or, by the exercise of proper diligence, should have known that the plaintiff's bonds were so used. When, as in this case, such a pleading is assailed by motion or demurrer, it must be considered as only a pleading of the latter alternative. The plaintiff must be judged by the weaker claim of his alternative pleading. If a demurrer is being considered, the alternative allegation is confessed only as to the weaker charge. The party who demurs only admits that the party "by the exercise of a reasonable degree of care and prudence might have known". In other words,

the net result of the plaintiff's pleadings, in this case, on this subject is to charge that the defendants, by the exercise of proper diligence, should have known that the things of which complaint is made existed or transpired. In Greenfield Savings Bank v. Abercrombie, 211 Mass. 252, 97 N. E. 897, 39 L. R. A. (N. S.) 173, when commenting upon an alternative pleading, in the following language, " 'as the defendants well knew, or, by the exercise of a reasonable degree of care and prudence, might have known' ", the court said:

"It follows, of course, from the recognized rules of equity pleading, that such an averment in the alternative does not charge actual knowledge, but simply that the defendants, by the exercise of reasonable care and prudence, ought to have known the fact."

See, also, Daniels v. Berry, 146 S. E. (S. C.) 420, 21 R. C. L. 451; Anderson v. Railway Company (Minn.), 114 N. W. 1123, 14 L. R. A. (N. S.) 886.

It appears from the record that the charge which subsequently appeared as Count 5 of the amended and substituted petition was purposely omitted from the said substituted petition. We are confronted with the question whether Count 5 of the amended and substituted petition contains a separate and distinct cause of action from that contained in the first four counts thereof. Manifestly, this question must be answered in the affirmative.

Obviously, if the claims made by the plaintiff are true, the bank is responsible to the plaintiff for the damages accrued to the plaintiff by reason of the conversion of the bonds. The first four counts of the amended and substituted petition contain such a general claim, stated in different forms. Not only is the bank responsible to the plaintiff for the conversion of the bonds but, it is charged, that by virtue of the official positions held by the defendants in the bank, they either knew or should have known what was being done by the employees of the bank in reference to the use of the Government Bonds belonging to the plaintiff, and having such knowledge, actual or constructive, they are personally responsible because of negligence on their part in connection therewith.

This claim is not based upon any affirmative act on the

part of any one of the defendants, but rather upon alleged negligent acts of omission. It is the claim of the plaintiff that the defendants failed to properly perform their several duties as directors and officers of the bank and by reason thereof the plaintiff suffered damages and the defendants should respond to the plaintiff because of the alleged negligence of the defendants.

Parenthetically, it may be stated that upon motions and demurrers of the several defendants, interposed to the original petition, everything was eliminated therefrom by the trial court except Count 2, which is in substance Count 5 of the "amended and substituted" petition, and it was with such a record, then made, that the plaintiff filed the "amended and substituted" petition consisting of four counts, no one of which contained the only charge remaining, at the time, in the original petition.

Plaintiff saw fit to rely upon his claims against the defendants, based upon their negligence up to the time when Count 5 was filed as an amendment to the substituted petition. In the meantime, the statute of limitations had run.

The alleged conversion occurred January 5, 1924. The amended and substituted petition was not filed until May 15, 1929, more than five years after the said alleged conversion, and the amendment to the substituted petition, containing Count 5, was not filed until October 18, 1929, or five years and nine months after the alleged conversion.

As was said in Pease v. Citizens State Bank, 210 Iowa 331:

"The rule is well established that, if the amendment pleads a new and independent cause of action, it is to be treated as the commencement of a new suit, and if the period of limitation has intervened, the amendment is subject to demurrer. If, however, the amendment merely amplifies and enlarges the cause of action originally pleaded, it will be upheld, notwithstanding the statute of limitations. The cases are collected in Plantz v. Kreutzer & Wasem, 192 Iowa 333. See, also, Emeny v. Farmers Elev. Co., 194 Iowa 282."

In the Pease case, the original cause of action was predicated solely upon the alleged negligence of the appellant, as an agent of the appellee, in making improvident loans. The

amendment pleaded a cause of action predicated upon alleged fraudulent misapplication and appropriation of appellee's funds by appellant. The court said:

"Negligence in handling a principal's funds by an agent furnishes a cause of action. Fraudulent misappropriation of a principal's funds for the agent's own use and benefit furnishes quite another and different cause of action."

In the case at bar, when the original four counts of the substituted petition are stripped of all conclusions and immaterial matters, it appears quite clearly that they state a cause of action against the defendants, based solely upon alleged negligence, while Count 5 states a cause of action based entirely upon an active, deliberate conversion by the defendants. In the one case, it is sought to hold the defendants liable to the plaintiff because of an alleged negligent failure on the part of the defendants to properly perform their duties as officers of the bank. It must not be overlooked that the plaintiff had no personal relations with any one of the defendants in connection with the plaintiff's bonds. It is not claimed that any one of the defendants personally received the plaintiff's bonds for safe keeping. The attempt is made to hold these defendants liable solely because they were officers of the bank with which the bonds had been deposited as a bailment. On the other hand, in Count 5 of the amended and substituted petition, it is sought to hold the defendants and each of them liable on an entirely separate proposition, to wit, that the defendants had personally, by affirmative acts of their own, each converted the plaintiff's bonds. Manifestly, these are two separate causes of action. The one is based on negligent omission to act in an official capacity, the other on affirmative, active conversion.

On the question generally, see Box v. C. R. I. & P. Ry. Co., 107 Iowa 660; Brooks v. Seevers, 112 Iowa 480; Thayer v. Coal Co., 129 Iowa 550.

Additional cases might be cited in support of this proposition. It follows that the plaintiff cannot recover on Count 5 of the amended and substituted petition because it states a separate cause of action and the plaintiff permitted this separate cause of action to become barred.

II. We now come to a consideration of the question

whether the plaintiff can recover on the general charge of negligence against the defendants. As was said in In Re Insolvency of Farmers & Merchants Savings Bank of Mt. Pleasant, 202 Iowa 859:.

"It is well settled that, when a bank receives bonds or other property of a customer for safe-keeping, it becomes a bailee, and liable as such. Bowen v. First Nat. Bank, 200 Iowa 40; Kubli v. First Nat. Bank, 199 Iowa 194; Bloomheart v. Foster, 114 Kan. 786, (221 Pac. 279); Spry v. Hirning, 46 S. D. 237 (191 N. W. 833); State v. Bunton, (Mo.) 285 S. W. 97; National Bank v. Graham, 100 U. S. 699 (25 L. Ed. 750); Manhattan Bank v. Walker, 130 U. S. 267, (32 L. Ed. 959)."

See, also, Leach v. Farmers & Merchants Savings Bank of Mt. Pleasant, 202 Iowa 885, in which latter case the plaintiff was denied a preference against the assets of the bank. Moreover, there is no claim that this was a bailment for hire. In other words, it is not claimed that the plaintiff was compensating either the bank or the defendants in this case for the safe-keeping of his bonds. Manifestly, the bailment did not involve a trust in the sense in which the word is used in the law, for the title never passed from the plaintiff.

This court said in Doyle v. Burns, 123 Iowa 488:

"A bailment exists whenever the ownership and the possession of specific corporeal chattels are lawfully severed from each other. In a trust of personal property, the legal ownership passes to the trustee, and he has something more than bare possession. In cases of bailment the legal ownership is in the bailor, and the bailee simply has possession, which may or may not be for some specific purpose."

There is no proper allegation in the plaintiff's pleadings that there was any intention in the case at bar to pass the title from Cornick to the bank, much less to the defendants in this case. The allegations are quite to the contrary. At the time the plaintiff's bonds were sent to New York, the bank was a going concern. The mere fact, if it be a fact that although it was a going concern, it was nevertheless insolvent, does not impose upon the defendants herein the obligations of a trustee as to the plaintiff's bonds. The rules of the so-called "trust

fund doctrine'' do not here apply. It must not here be overlooked that in the case at bar the special deposit was made with the corporation, the bank, not with the defendants in this case. They were merely representatives of the corporation and, as such, its agents.

In considering, as a question of law, the liability of the defendants herein, it is to be noted that there is no contractual relation, express or implied, between a depositor in a bank and a bank director. The defendants in this case were not agents or trustees of the creditors of the bank, including the plaintiff. On this question, this court said, in Frost Mfg. Co. v. Foster, 76 Iowa 535:

"They [the directors] are not answerable to them [the creditors], either for the management of the affairs of the company, or the disposition they may make of its property, unless made so either by the provisions of the charter or some general statute, neither of which is claimed to exist here. * * * But the ground of the complaint is that by their mismanagement of its affairs they have reduced it to insolvency. That they are not answerable to the creditors for such mismanagement is clear, both upon principle and authority.''

In U. S. Fidelity & Guaranty Co. v. Savings Bank, 154 Iowa 588, in which action was brought in equity to recover from the directors of the bank the losses alleged to have been sustained by the plaintiff as surety for administrators who deposited funds in the bank, this court, after considering the cases cited, said, among other things:

"Our conclusion is that, where a creditor of a corporation sues in his own personal right to recover from a director losses which he has sustained by extending credit to the corporation, his action must be founded on deceit, and not upon negligence, and that it must ordinarily be brought at law, and not in equity.''

See, also, Williams v. Dean, 134 Iowa 216.

In Daniels v. Berry, 146 S. E., (S. C.) 420, the court had before it a suit brought by certain depositors of a bank then in the hands of a receiver on the theory that the directors were

liable to the plaintiffs as depositors for the loss of certain deposits. The court said:

"In the cases involving this question some confusion has arisen through failure to distinguish clearly between the directors' relationship to the bank itself and that to depositors. Unquestionably directors, as the agents of the bank, owe to the bank itself the duty to exercise ordinary care in the management of its affairs. A violation of that duty would constitute negligence, and the bank, or its receiver when one has been appointed, or the creditors if the receiver should refuse to sue, may bring an action for the benefit of the bank against the directors for such negligence. A violation of the directors' duty to the bank, however, could not give rise to a cause of action in favor of the depositors, and any cause of action which the latter may have must be based upon some violation of a duty owing to them by the directors. The depositor makes no contract with directors as individuals, his contract being entirely with the bank in its separate entity. Nor can we see any implied contract between the depositor and the directors as individuals, since the directors are only agents of the bank."

In 3 R. C. L., page 474, it is said:

"There is nothing of either contract or trust, in all ordinary cases, to create any relation between the depositors of a bank and its directors, and at common law it would seem that there was no personal liability on the part of the directors to depositors merely on account of their assent to the receipt of deposits with the knowledge that the bank was insolvent."

In 7 C. J., 565, citing Hart v. Hanson, 14 N. D. 570, 105 N. W. 942, 3 L. R. A. (N. S.) 438, it is said:

"The directors of a bank are liable only to the corporation whose agents they are for violation or neglect of official duty; and in the absence of actionable deceit, they are not liable to a creditor of the corporation for loss suffered through the neglect of their official duties."

In said Hart v. Hanson, 14 N. D. 570, 105 N. W. 942, 3 L. R. A. (N. S.) 438, the court had before it an action to hold a director of a bank liable for losses which the plaintiff sus-

tained as surety upon a bond executed to indemnify the county against loss of funds received by the bank as a depositary. The action was based upon a charge, among other things, that the bank accepted deposits from the county after it became insolvent. The allegations and proof showed merely ''gross neglect by the defendant of his duties as a director, and no attempt on his part to have the bank discontinue business by reason of insolvency.''

See, also, Union National Bank v. Hill, 148 Mo., 380, 49 S. W. 1012; Savings Bank v. Caperton, 87 Ky. 306, 8 S. W. 885; Deaderick v. Bank of Commerce, 100 Tenn. 457, 45 S. W. 786; Landis v. Hotel Co., 53 N. J. Eq. 654, 33 Atl. 964; Swentzel v. Penn Bank, 147 Pa. 140, 23 Atl. 405, 415, 15 L. R. A. 305, 30 Am. St. Rep. 718; Robinson v. Hall, 59 Fed. 648; Briggs v. Spaulding, 141 U. S. 132, 11 S. Ct. 924, 35 L. Ed. 662.

In Allan v. Cochran, 107 Southern, 292, there was an action by depositors against the directors for loss sustained by them by reason of a failure of the bank. The petition charged the defendants with neglect, inefficiency and omission of duty in their conduct of the business and affairs of the bank. It alleged that their negligence and omissions of duty enabled the cashier of the bank to embezzle and dissipate the funds of the institution. They do not allege fraud, conspiracy, malfeasance or actionable deceit. The court dismissed the petition, and, among other things, said:

''There is no statute or law of this state authorizing the creditors of a corporation to bring a personal action against its officers or directors for the recovery of losses resulting from their negligent management of the affairs of the corporation. The officers and directors are merely the agents of the corporation, and except for acts of malfeasance they are answerable to it alone. The depositors in a bank are creditors of the bank, and there is no contractual relation between the officers and directors of a bank and its creditors. The corporation itself, and, in proper cases, the stockholders have a right of action against the agents of the corporation for gross negligence, maladministration of the corporate affairs, and omissions of official duty, but a creditor of the corporation has no such right.''

Further the court says:

"As the directors are the agents of the bank, they are not responsible to third persons for mere negligence of duty or nonfeasance toward their principal."

See Delaney v. Rochereau, 34 La. Ann. 1123, 1127, 44 Am. Rep. 456; also 7 C. J., p. 565.

In Williams v. Fidelity Loan and Savings Company, 128 S. E., 615 (Va.), that court said, quoting with approval from Briggs v. Spaulding, 11 Sup. Ct. 929, 35 L. Ed. 662:

" 'Bank directors are often styled trustees, but not in any technical sense. The relation between the corporation and them is rather that of principal and agent, certainly so far as creditors are concerned, between whom and the corporation the relation is that of contract and not of trust.' "

The Virginia court said (Williams, supra):

"While there appears to be much conflict as to the status of a director, we think the weight of authority sustains the position taken by Judge Keith in the case of Winston v. Gordon, supra, and that the correct rule is that a director of a bank or loan institution is an agent and not a trustee. In so far as the rule laid down in the Marshall case is in conflict with the rule here stated, the same is overruled."

Winston v. Gordon is found in 115 Va. 899, 912, 80 S. E. 756, 761. The Marshall case referred to is found in 8 S. E. 586, 2 L. R. A. 534. In Mason v. Moore, 76 N. E. (Ohio) 932, Supreme Court, State of Ohio, that court quoting with approval from Briggs v. Spaulding, 141 U. S., 132, 35 L. Ed. 662, holds the following:

"It is there decided that directors of a national bank are not insurers of the fidelity of its agents whom they have appointed, and are not responsible for losses resulting from the wrongful act or omission of other directors or agents, unless the loss is a consequence of their own neglect of duty; they must exercise ordinary care and prudence—such degree of care as ordinarily prudent and diligent men would exercise; knowledge of all the affairs of a bank, or what its books and papers would show, cannot be imputed to a director for the purpose of charging him with liability."

See, also, Swentzel v. Penn Bank, 23 Atl. 405, 15 L. R. A. 305, 30 Am. St. Rep. 718, in which it is said:

"A director of a bank, whose services are gratuitous, and whose duties are to attend the bank once or twice a week to assist in discounting paper, to see how much money there is to loan, and once or twice a year to count the cash on hand and examine the bills receivable and securities to see whether they correspond with the statement furnished by the officers, does not owe the creditors of the bank such care as a reasonably prudent man exercises in his own business, but is amenable only for fraud, or for such gross negligence as amounts to fraud."

The court in the Mason case, supra, also said:.

"The directors of a bank are surely authorized to appoint a cashier conferring upon him the powers usually exercised in such an office. He is properly confided in as to the custody of its money, securities, books and valuable papers, and the supervision of its books and accounts. While it is true that the directors cannot divest themselves of the duty of general supervision and control, they may properly intrust to him the powers usually appertaining to the direct management of the business, and, where they have acted in good faith and with ordinary diligence in their general supervision, they are not liable for losses resulting through secret speculations and secret false entries of the cashier. Their position does not require them to devote themselves to the details of the business, which may be left to the clerks and bookkeepers under the supervision of the cashier. They are not required to look with suspicion upon the conduct of these agents or employees, nor to practice a system of espionage over the cashier or his subordinates without apparent reason, and they have a right to assume they are honest and faithful, where no circumstances transpire to excite doubt or suspicion. On the other hand, they cannot excuse their indifference or negligence by pleading mere honesty of intention."

See, also, Utley v. Hill, 49 L. R. A. (Mo.) 323.

In Shaw v. McShane (Texas), 33 S. W. (2d Ser.) 277 (1930), that court said:

"Shaw was not the agent of the other directors and was not acting for them when he made the loan to Garland. He was president and managing officer of the bank and was acting as the bank's agent. The only evidence of ratification furnished by the record is found in the acts of the other directors in signing the note after the loan had been made. This amounted to no more than an acquiescence in what Shaw had done. * * * One agent of a corporation does not become a *particeps criminis* merely because he approves a wrongful act committed by another agent of the same principal. The doctrine of ratification has no application to this case."

Numerous other cases from various jurisdictions to the same effect might be quoted. There are cases to the contrary. Some of them are based upon violations of statutory regulations; in others, the directors were guilty of acts which constituted fraud or deceit, and in still others, they were guilty of *gross* neglect amounting to reckless disregard of depositors' rights or to fraud. No such case is here properly pleaded. There is no statutory liability. It is not alleged that any defendant was engaged as an active or paid bank representative.

Ordinarily, a director of a bank serves for an insignificant compensation, or none at all. In most instances, he is connected with his own independent business and only goes to the bank for more or less infrequent directors' meetings. At these meetings, various questions of policy and bank management are brought up, discussed and determined, but seldom, if ever, do the details of the ordinary routine management of the bank come to the attention of the director. Were he to be held liable for the misconduct of the active employees of the bank upon the theory of merely non-action or neglect as is claimed in this case, it would become necessary for every bank director to stay in the banking room every moment while the bank is open and scurry from post to post in the bank to ascertain just what every employee of the bank was doing. Manifestly, this leads to an absurdity because it could not be done nor can it be claimed to be neglect on his part that he does not investigate to ascertain everything the active employees of the bank do. He is under certain statutory obligations as the director of a bank and he owes many obligations to the bank as such, but

730

in a case such as the one at bar, he cannot be held merely for non-action or negligence.

The trial court sustained the demurrer of the defendant, Montgomery, to the various counts of the substituted petition, sustained the demurrer of the defendants Hazen, Galer, Geeseka, Skipton and Bates to Count 5 of the petition, sustained the motions of the defendants Hazen, Galer, Geeseka, Skipton, Weir and Bates to strike the various counts of the substituted petition. No time was asked or given the plaintiff in which to further plead.

On November 8, 1929, the defendants filed a motion, in which they allege that the statutory time for plaintiff to replead has expired and that there has been no order of court extending the time for further pleading by the plaintiff and that the plaintiff be held to be in default, and for dismissal of the action and judgment against the plaintiff. Said motion for default and judgment dismissing the action was sustained and judgment rendered against the plaintiff for costs.

We think the trial court correctly ruled. It follows the cause must be, and is,—Affirmed.

All Justices concur.