IN RE GUARDIANSHIP OF ANNA S. FAHLIN.

No. 42276.

██

APRIL 3, 1934.

Clifford Powell, for appellant American Surety Co. of New York.

Hysham & Billings, for appellant Albert G. Ossian, guardian.

Ferguson & Ferguson, for appellee Earl Ferguson, guardian ad litem.

ALBERT, J.— Anna S. Fahlin was of Swedish nativity and came to live near Stanton, Iowa, in the year 1869. Her husband predeceased her, and at the time involved herein she had something over $2,000 in money, which, a short time prior to the appointment of the guardian, she withdrew from the National Bank of Stanton and placed on deposit in the State Bank of Stanton, $1,700 of which money was represented by a certificate of deposit in the latter bank and the balance was in an open account.

Shortly thereafter, in June, 1929, she made application to the district court of Montgomery county, requesting the court to appoint Albert G. Ossian guardian of her person and property. In due time such order was made and the guardian qualified and proceeded to act. His inventory shows that Anna was the owner of a house and lot in the town of Stanton, two time deposits in the bank of $2,000, and a checking account of $100. A report was made and filed by the guardian, to which objections were filed, and later a second report was filed and thereupon a guardian ad litem was appointed, who filed objections which are the basis of this controversy. The guardian, on taking charge of the funds belonging to this estate, paid out funds from time to time for the care and keep of this ward, and on the 10th day of December, 1931, received from said Stanton State Bank the following certificate of deposit:

"Stanton, Iowa, December 10, 1931.

"This Certifies that Albert G. Ossian, Guardian for Anna D. Fahlin, has deposited with Stanton State Bank, $1,200.00 payable to the order of Albert G. Ossian, Guardian, in current funds on return of this Certificate properly endorsed twelve months after date with interest to maturity only at the rate of 4 per cent per annum.

"[Signed] Alfred Danbom, Cashier."

In February, 1932, the Stanton State Bank went into the hands of a receiver. At that time the aforesaid certificate of deposit was still outstanding in the hands of said guardian.

After the closing of the bank, objections were made to the reports of the guardian, neither of which had been approved by the court, seeking to hold the guardian and the surety on his bond for the loss occasioned by the closing of said bank.

Mrs. Fahlin, who did not read or speak English and testified through an interpreter, said that she never had any education and never went to school; that she never issued but one check in her life and that was for $5; and that she never saw or read any of the reports of the guardian. If she were living at the present time, she would be about 94 years of age.

The appointment of the guardian on Mrs. Fahlin's application necessarily carries with it the idea that she was incompetent to look after her own business affairs, else the guardian would not have been appointed. There seems to have been some feeling between Anna and her daughter, Phoebe Johnson, over money affairs, and it is claimed (but disputed) that when Anna Fahlin and her daughter deposited the money in the Stanton State Bank prior to the appointment of the guardian, she was told she could withdraw it at any time; but no such conversation or agreement seems to have been had with the guardian after his appointment. It is further claimed in the record that Anna insisted that her guardian continue to keep the money on deposit in the Stanton State Bank, but, even if this were so, she having been adjudged an incompetent person before this occurrence would not be competent to make such direction; hence the case of In re Estate of Olson, 206 Iowa 706, 219 N. W. 401, has no application.

The original certificate of deposit held by Mrs. Fahlin was in the hands of her guardian and new certificates were taken from year to year up to the time of the issuance of the one above set out.

 The crux of this whole controversy turns upon the question of whether this certificate was a deposit, or a loan, or an investment, in the light of the fact that no order of court was ever issued authorizing the guardian to make such disposition of the ward's funds.

It is sometimes difficult to determine whether a transaction should be called a deposit or a loan. The two, however, are not the same, and are not so considered by any one in business, or the ordinary affairs of life. Certainly, the thousands who daily deliver money to banks for safe-keeping and return in corresponding currency, do not regard the transaction as a loan, nor do they so speak of it. A deposit is for the benefit of the depositor; a loan for the benefit of the borrower. It is true the deposit may also benefit the depositary; but such is not the primary object of the transaction. When the deposit is made for a fixed period, during which the depositor has no right to demand a return of the money, the transaction may be regarded as, in all substantial respects, a loan; but herein lies an essential distinction between a loan and a general deposit. In the former, the person receiving the money agrees to return it at a future fixed date; in the latter, at any time it is demanded. If it is agreed that the money shall remain for a fixed period, there is a loan and not a deposit. We concede that this marks the distinction between a loan and a deposit under the circumstances involved in this case.

In State v. Corning State Savings Bank, 136 Iowa 79, loc. cit. 83, 113 N. W. 500, 502, we used as a part of the basis of that opinion the following, quoted from In re Law's Estate, 144 Pa. 499, 22 A. 831, 14 L. R. A. 103:

"Deposit is where a sum of money is left with a banker for safe-keeping, subject to order, and payable, not in the specific money deposited, but in an equal sum. It may or may not bear interest, according to the agreement. While the relation between the depositor and his banker is that of debtor and creditor simply, the transaction cannot, in any proper sense, be regarded as a loan unless the money is left not for safe-keeping, but for a fixed period, at interest, in which case the transaction assumes the characteristics of a loan." Citing State v. McFetridge, 84 Wis. 473, 54 N. W. 1, 11, 998, 20 L. R. A. 223.

The case last cited further says:

"The retention by the treasurer of substantial control over the funds in the one case, and his loss of such control in the other, mark the leading distinction between a mere deposit of the funds and an 'investment' thereof, as those terms are used in statutes."

In Elliott v. State Bank, 128 Iowa 275, loc. cit. 277, 103 N. W. 777, 778, 1 L. R. A. (N. S.) 1130, 111 Am. St. Rep. 198, we said:

"A deposit is a transaction peculiar to the banking business, and one that the courts should recognize and deal with according to commercial usage and understanding. The primary purpose of a general deposit is to protect the fund, and some of the incidental purposes thereof are the conveniences of checking and transacting large business interests without keeping and handling large sums of money. The transaction is in reality for the benefit and convenience of the depositor, and while the relation of debtor and creditor exists, and the bank has the use of the money for commercial gain, it assumes no further obligation than to pay the amount received when it shall be demanded at its banking house."

In discussing this question in Hunt v. Hopley, 120 Iowa 695, 95 N. W. 205, we said:

"The transaction differs essentially from a loan. That is for the benefit of the borrower, while a deposit is for the benefit of the depositor. The depositary may obtain an incidental advantage, but that is seldom the original object contemplated. In a loan the borrower promises to return the money at a future time; in a deposit, whenever the money is demanded. * * * The distinction between a deposit and a loan is illustrated in that case (Independent School Dist. of Sioux City v. Hubbard, 110 Iowa 58, 81 N. W. 241, 80 Am. St. Rep. 271), for, while demand certificates of deposit on solvent banks were treated as equivalent to cash, time certificates bearing interest were denounced as private loans of public money, amounting to conversion. * * * 'While the relation between the depositor and his banker is that of debtor and creditor, simply, the transaction cannot, in any proper sense, be regarded as a loan, unless the money is left, not for safekeeping, but for a fixed period, at interest, in which case the transaction assumes the characteristics of a loan.' "

This distinction between a demand certificate and one payable at a specific time in the future is the line of demarcation between

a "deposit" and a "loan". Such seems to be the uniform holdings of the authorities. Appeal of Baer, 127 Pa. 360, 18 A. 1, 4 L. R. A. 609; In re Law's Estate, 144 Pa. 499, 22 A. 831, loc. cit. 832, 14 L. R. A. 103; State v. Marron, 18 N. M. 426, 137 P. 845, loc. cit. 848, 50 L. R. A. (N. S.) 274; First American Bank & Trust Co. v. Town of Palm Beach, 96 Fla. 247, 117 So. 900, loc. cit. 903, 65 A. L. R. 1398; Shaw v. McBride (Tex. Civ. App.) 9 S. W. (2d) 410, loc. cit. 411; Shaw v. McShane (Tex. Com. App.) 50 S. W. (2d) 278, loc. cit. 282.

We had one phase of this question before us in the case of Partch v. Krogman, 202 Iowa 524, 210 N. W. 612. The certificate of deposit in that case is set out on page 525. The wording in that certificate of deposit is identical with the wording in the present certificate, but the punctuation is not the same. In the Partch case the certificate provided it was payable to the order of himself "in current funds on the return of this certificate properly endorsed. Twelve months after date with interest at 5 per cent or six months after date with interest at 5 per cent per annum Not subject to check". In that case we held that the certificate there involved was a demand certificate because of the fact that no provision was made as to the date of maturity of the same. By comparison of the certificate in that case and the certificate in the case at bar it will be noted that no period appears after the word "endorsed" in the certificate in the case at bar, and therefore, omitting the formal parts, the present certificate reads:

"This certificate properly endorsed twelve months after date with interest at 4 per cent."

It is apparent that the use of the period in the Partch case makes two sentences, the first of which is complete within itself. In the present case, no such period appearing therein, the fair reading of the text is that the certificate is payable at the end of twelve months, which gives a fixed date of payment. Under the rule above announced, therefore, the certificate in the case at bar passes the title and the right to possession of this money to the bank for the term of twelve months, and the guardian loses control thereof for that term. It therefore must follow, under the above rule, that this is a loan and not a deposit. The investment of the ward's funds are limited by statute (section 12772 of the Code), where permission is given for investment of trust funds by fiduciaries, and no provision

is made therein for loaning or investing said money in banks. It is our conclusion, therefore, that the appellant, as such guardian, loaned his ward's funds wrongfully and without authority of law. While it may have been done with the best of intentions and in good faith on his part, at the same time, having been done in violation of the statute, he must account therefor and make restitution to this estate for the amount lost by reason of such loan. This is the conclusion reached by the district court, and with it we agree.—Affirmed.

CLAUSSEN, C. J., and KINDIG, EVANS, and DONEGAN, JJ., concur.