OLIN CEMETERY ASSOCIATION et al., Plaintiffs, HARRY MILLER, Trustee, Substituted Plaintiff, Appellants, v. CITIZENS SAVINGS BANK of Olin, et al., Defendants, Appellees.

No. 43266.

December 15, 1936.

Rehearing Denied April 9, 1937.

Donnelly, Lynch, Anderson & Lynch, for appellants.

Don Barnes and Geo. C. Gorman, for appellees.

Stiger, J.—Gilbert Blayney, one of the defendants, was appointed trustee of the funds and property of the Olin Cemetery, September 14, 1915, under the provisions of Code section 10198, and served as such trustee until his resignation in September 1932.

At the time of his appointment, Blayney was a director of the Citizens Savings Bank of Olin, Iowa, and was President of the bank and an active officer thereof from some time prior to the year of 1926 until about the middle of 1931.

He did not invest the funds in compliance with Code sections 10200, 10202 and 10203, but during all the time he was trustee he kept all of the trust funds on deposit in the defendant Citizens Savings Bank of Olin, Iowa, in interest bearing time certificates drawn for one year periods which were renewed each year. The funds were so deposited without an order of court and the reports of the trustee did not disclose the investment of the funds in the certificates of the bank. The defendants, Flenniken, Chamberlin, Moreland, Russell and Miller were directors of the bank.

Persons interested in the association suggested to Mr. Blayney that his $1,000 trustee's bond should be increased and pursuant to this suggestion, at the direction of Mr. Blayney, the

Citizens Savings Bank on March 8, 1927, executed its bond to the Olin Cemetery Association in the sum of $8,000. The sureties on the bond were the above named directors. The amount of the trust fund, just prior to giving the bond, was $6,249.65.

The obligation of the bond was as follows:

"That the above bonden Citizens Savings Bank of Olin, having been made the depository bank for the Trust Funds of the said Olin Cemetery Association, in which bank the said Trust Funds of said Olin Cemetery Association are to be placed and kept during the ensuing one years; that as such depository bank, the said Citizens Savings Bank of Olin, shall exercise all proper care and diligence in the preservation of the said Trust Fund that may be placed in said depository bank at any and all times; that said depository bank shall not pay out all, or any portion of the said trust fund so placed in said depository bank to any person or persons except upon the written order of the duly appointed, acting and authorized Trustee of said Trust Fund, and that at the termination of the said one years, said Citizens Savings Bank of Olin, as such depository bank shall render a true account of all Trust Funds received by said depository bank, and shall turn over, on written order of the duly appointed, acting and authorized Trustee of said Trust Fund, then and in that case only, this bond shall be void and of no force or effect, otherwise to remain in full force and effect."

On February 16, 1932, the Cemetery Association and Blayney, as Treasurer of the association and trustee of the funds, brought suit against the defendants on the bond. Blayney resigned as Trustee and Harry Miller, his successor trustee, was substituted as the plaintiff, and on September 1, 1932, Harry Miller as trustee filed his amended and substituted petition in two counts.

In count one plaintiff claims that the parties to the bond intended to designate as obligee in the bond the trustee of the funds and property donated for and on account of Olin Cemetery and through a mutual mistake of the parties the Olin Cemetery Association was designated as obligee. Plaintiff also alleges in count one that all the parties to the bond knew it was intended to continue the making of the deposit of said funds over a period of years and as long as the officers of said bank could induce the trustees to make and continue the deposit and that the insertion

in the bond of the period of "one years" wherever the same appears was through oversight and mutual mistake and that such words should be stricken and that there should be substituted therefore the following or its equivalent: "Such period as such funds are by the Trustee allowed to remain on deposit, or until repayment of such deposits is demanded by said trustee."

Plaintiff prays for a reformation of the contract and for judgment on the bond against all of the defendants for breach of the bond.

In count two the plaintiff alleges that for some time prior to March 1, 1927, and until 1931, Blayney was president and the defendants were directors of the Citizens Savings Bank, that they desired to keep the cemetery trust funds on deposit in the bank, and to accomplish this executed the bond above set out; that the trustee, Blayney, had deposited all of the trust funds in the bank, the amount of the fund being increased from time to time by donations; that the amount in 1927, was over $5,000 and had been increased to $9,000 in 1931. The plaintiff further states that the deposits were evidenced by interest-bearing time certificates which were renewed from time to time; that these deposits in the bank constituted illegal loans and a wrongful investment of the trust funds in violation of Code sections 10202, 10203 and that all of the deposits were made without an order of court; that the defendant officers and directors of the bank participated in the conversion and mismanagement of the funds by the trustees and with full knowledge of the character of the funds; that they permitted them to be mingled with the general assets of the bank and to be loaned and invested by the bank and that said funds were converted and dissipated by the defendants; that when the bank closed in December 1931, the amount of the trust fund was $10,300 and defendants have refused to render any account of the funds or pay the plaintiff the amount thereof. Plaintiff prays for an accounting and that the defendants be held liable as trustees ex maleficio. The decree found that the bond did not correctly designate the obligee and reformed the bond by designating as obligee the trustee of the funds and property donated for and on account of the Olin Cemetery. The decree refused the plaintiff any further relief and especially found that the defendants were not trustees ex maleficio. The court dismissed plaintiff's amended and substituted petition. Plaintiff appeals. The court overruled defendants' motion to

strike, to transfer certain issues to the law calendar and to dismiss plaintiff's amended and substituted petition. No appeal was taken by the defendants from this ruling.

I. The plaintiff contends that the insertion in the bond of the words "one years" was through a mutual mistake and that there should be substituted for these words the following: "Such periods as said funds are by the trustee allowed to remain on deposit or until repayment of such deposits is demanded by said Trustee."

Plaintiff claims that it was the intention of all the parties to the bond to continue the deposit for a period of years and so long as the officers of the bank could induce the trustees to continue the deposit, and that the defendant signers of the bond are estopped to assert that the bond should be limited to cover a one-year period for the reason that they knew that it was contemplated that the bond should secure the trust funds so long as they remained in said bank and that the trustee continued the money on deposit in said bank in reliance upon the bond.

It is a familiar and well established rule that to justify the reformation of a written instrument the evidence must be clear, satisfactory and convincing and free from reasonable doubt. Galva First National Bank v. Reed, 205 Iowa 7, 215 N. W. 732; Rate v. Ryan Bros., 199 Iowa 1050, 203 N. W. 13; Fitch v. Flinn, 198 Iowa 823, 200 N. W. 402.

The plaintiff established the fact that all parties to the bond knew the bond was given by the bank to secure all the trust funds. It is no doubt true that all the officers of the bank, including Blayney, the trustee and president of the bank at the time the bond was given, contemplated keeping the funds in the bank as long as they would be permitted to do so. This evidence was not sufficient to warrant a reformation.

The bond was not given by the bank to induce Blayney, its president and trustee of the funds, to deposit the funds in the bank. Mr. Blayney had wrongfully invested the funds in the certificates of the bank since 1915 and was, as were all the officers of the bank, more than willing to continue to keep the funds in the bank. This bond was given to satisfy some of the persons interested in the Cemetery Association because the $1,000 bond was insufficient.

Harry Miller, who requested the trustee to give an additional bond, was interested in the association and was satisfied

with the bond. The amount of the fund was increased from time to time through donations, and the $8,000 bond was sufficient to protect the amount of the trust fund at the time it was given. The evidence was insufficient to establish plaintiff's contention that the defendants intended that the bond they signed should cover a period of more than one year. The trial court was right in refusing to so reform the bond.

██ II. One of the conditions of the bond is "that the above bonden Citizens Savings Bank of Olin having been made the depository bank for the trust fund of the said Olin Cemetery Association in which bank the said trust funds of said Olin Cemetery Association are to be placed and kept during the ensuing one years, that as such depository bank the said Citizens Savings Bank of Olin shall exercise all proper care and diligence in the preservation of said trust fund that may be placed in said depository bank at any and all times."

We should state here that the statement in the bond that the bank had been made a depository bank for the trust fund is incorrect. The bank had not been constituted a depository bank for these funds by the court or any other authority. The deposits of the funds in the bank by Blayney, trustee, were wrongful and without authority from the very beginning of his trust in 1915.

The defendants construe the above condition as referring, not to the entire trust fund, but only to deposits made during the period of the bond, that is from March 8, 1927, to March 8, 1928, which were in the sum of $525. We find no merit in this contention. Mr. Blayney, as trustee, was requested to furnish an additional bond as trustee to secure the trust funds. The evidence clearly discloses that the president, Mr. Blayney, and the directors all understood that the bond was given to secure the cemetery trust funds. At the time the bond was requested and given, there were $6,249.65 deposited in the bank represented by the time certificates. The bank obligated itself in the bond to preserve the fund as a trust fund. Its duty and the duty of the trustee was to cash these certificates and deposit the proceeds in a special trust deposit and preserve the same. The purpose of the bond was clearly understood by the defendants. They fixed the penalty of the bond in the sum of $8,000 which amount amply secured the amount of the trust fund when the bond was given.

██ III. Defendants claim that plaintiff is estopped from prosecuting the suit because he is guilty of laches in asserting

the claim and that if the action had been brought within a reasonable time and while the bank was solvent the defendants could have protected themselves by compelling the bank to pay the certificates in cash when they matured in 1929.

The defense of laches is not available to the defendants. The bank had breached the bond and continued to do so until the bank closed. The breach was a continuing one, of which the directors had full knowledge. They elected to permit the funds to be intermingled with the general deposits of the bank until it closed. They cannot take advantage of the wrong of their principal and their own wrong and escape liability therefor, because trustee Blayney did not bring suit against them and himself as a director and president prior to the time the bank closed. The trustee and director and his co-directors were all liable on the bond and obviously the officers and directors did not desire or expect Blayney to bring suit. The defendants and the bank could have protected themselves at any time by performing their duty to cash the certificates and deposit the proceeds as a special trust fund as contemplated by the bond. As the directors and managers of the bank, they had the authority and right to do this.

IV. The bond further provided "that the said depository bank shall not pay out all or any portion of said trust fund so placed in said depository bank to any person or persons except upon the written order of the duly appointed, acting and authorized trustee of said trust fund, and that at the termination of the said one years, said Citizens Savings Bank of Olin, as such depository bank, shall render a true account of all trust funds received by said depository bank, and shall turn over, on written order of the duly appointed, acting and authorized trustee of the trust fund."

It was the duty of the bank and Mr. Blayney, trustee, under the bond, to terminate the wrongful deposit in the bank by cashing the certificates of deposit and hold the money in the bank as a special deposit of the trust fund. They did not do this.

The certificates constituted a loan of and an investment of the funds by the trustee. In re Guardianship of Fahlin, 218 Iowa 121, 254 N. W. 296.

The funds were intermingled with the general funds and deposits of the bank and loaned and used by the bank in the same manner it loaned and used its general assets. There was no segre-

gation of these trust funds by the bank during the entire period of the trust. The funds were not turned over to the trustee at any time after the giving of the bond. Blayney, trustee, president and director of the bank, made no request or demand for the funds and it was retained by the bank until it closed in December 1931. The bank violated the condition of the bond that it would not pay out any part of the funds except upon the written order of the trustee and loaned the money and it was lost and dissipated. It violated its obligation to preserve said funds as a trust fund.

That Blayney as trustee failed to demand the fund after March 8, 1928, of himself as president and director of the bank and of his fellow officers, does not deprive the beneficiaries, through their new trustee, of recourse to the bond. To hold otherwise would place a premium on collusion. It was the duty of the trustee to demand possession of the fund at the termination of the bond or to secure a new bond.

The obligation to render a true account of all trust funds and turn them over to the trustee continued after March 8, 1928, and until the obligation was performed. United States Fidelity & Guaranty Co. v. City of Pensacola, 68 Fla. 357, 67 So. 87, Ann. Cas. 1916 B, 1236; Hale County v. American Indemnity Co., (C. C. A.) 63 Fed. (2d) 275.

 V. The plaintiff alleges in count two that the defendants are liable as trustees ex maleficio. The investment of these trust funds was limited by Code sections 10200, 10202 and 10203. There is no provision therein for loaning money to banks.

Trustee Blayney wrongfully invested the funds and is liable for the loss sustained to the trust estate. In re Guardianship of Fahlin, supra. The deposits in the bank in the time certificates being wrongful, a trust relation arose between the bank and the beneficiaries of the trust and the funds were held by the bank in trust for the benefit of Olin Cemetery. Andrew v. Farmers Savings Bank of Goldfield, 207 Iowa 394, 223 N. W. 249.

If a trustee wrongfully lends the trust funds of his beneficiaries and the borrower knows of such breach of duty he becomes a trustee of the money in invitum and the beneficiaries may hold them accountable as joint and several trustees. Leach v. Gray, 201 Ala. 47, 77 So. 341, 7 A. L. R. 890.

The plaintiff seeks also to hold the defendant directors liable for the trustees' breach of the trust in addition to their liability,

on the bond. It is the contention of the plaintiff that the directors knowingly participated in the illegal investment made by trustee Blayney.

The defendant directors, Miller, Russell and Moreland, who were also members of the examining committee, knew the trust funds were wrongfully invested in the time certificates of the bank by Mr. Blayney, their co-director, and the amount of the funds.

From 1927 to the closing of the bank it was subject to severe criticism by the state bank examiner, especially because of excess loans, objectionable bills receivable and re-discounts. The directors must have been influenced by their interest in the bank as directors in retaining this fund with the general assets of the bank. The bank and its officers used the funds in the bank's business and for the benefit of the bank. All persons participating in a breach of trust are liable as principals to the beneficiaries. The defendants, other than Chamberlin and Flenniken, participated in the dereliction of the trustee and are liable. Savings Deposit and Trust Co. v. Cahn, 102 Md. 530, 62 Atl. 819; Martin v. First Nat. Bank of Rush City, (D. C.) 52 Fed. (2d) 840; 26 R. C. L. 1322; Strauss v. United States Fidelity Co., (C. C. A.) 63 Fed. (2d) 174; Walker v. Howell, 209 Iowa 823, 226 N. W. 85.

The defendants, Chamberlin and Flenniken, did not actively participate in the affairs of the bank and there is no evidence that they had any knowledge of the mismanagement of the funds after the expiration of the bond, March 8, 1928.

It does not definitely appear when they retired as directors or what the amount of the trust fund was in the bank at the time of their retirement. These two defendants are not liable under count two.

The appellees rely on the case of Cornick v. Weir, 212 Iowa 715, 237 N. W. 245. In this case the plaintiff deposited with the Farmers & Merchants Savings Bank of Mount Pleasant, Iowa, as bailee, bonds in the amount of $17,000. The bank converted the bonds and the plaintiff, as bailor, sought to hold the directors of the failed bank liable for the conversion. The plaintiff charged that defendant directors, by the exercise of proper diligence, should have known that the things of which plaintiff complained existed and transpired. The defendants demurred to the petition. The demurrer was sustained and on appeal the ruling of

the trial court was affirmed. The case holds that the directors were agents of the bank and were not negligent in the failure to discover the wrongful acts of the active officers of the bank. This case is not an authority for the proposition that, if directors of a bank acquiesce and participate in the tort of their bank through its active officers, they are not liable.

The defendant directors were the statutory managers of the business of the bank. By the conversion, the bank became a trustee of the funds. Moreland, Russell and Miller, directors, knew that the cemetery trust funds were in the bank, and that they had been invested by trustee Blayney in the bank's certificates of deposit and were commingled with the general assets of the bank. They are charged with knowledge of the statutory provisions for and limitations on the investment of cemetery funds. They had knowledge of the breach of the trust by Mr. Blayney and acquiesced and participated therein for many years and until the bank closed. We see no escape from the conclusion that by such sanction of and participation in the breach of trust they are liable as trustees ex maleficio.

Judgment should have been rendered by the trial court on the bond on count one of the petition against all of the defendants in the sum of $6,012.50 with interest thereon from March 8, 1928, at 6 per cent.

Judgment should have been rendered on count two of the petition against all of the defendants except Flenniken and Chamberlin in the sum of $10,147.07 with interest at 6 per cent from September 21, 1931. The total amount of recovery allowed plaintiff on both counts is $10,147.07 with interest.

The cause is reversed and remanded for judgment in harmony with this opinion.—Reversed and remanded.

PARSONS, C. J., and KINTZINGER, DONEGAN, and ALBERT, JJ., concur.