**In the Matter of the CONSERVATORSHIP OF Darrell RININGER.**

**James M. PRICHARD, Conservator of Darrell Rininger, Appellant,**

v.

**Douglas RININGER and Brenda (Rininger) Ewing, Appellees.**

**No. 92–509.**

Supreme Court of Iowa.

May 19, 1993.

48

Barbara G. Barrett of Dickinson, Throckmorton, Parker, Mannheimer & Raife, P.C., Des Moines, and Hugh J. Perry of Perry Law Office, Storm Lake, for appellant.

David P. Jennett of McCullough Law Firm, Sac City, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, LAVORATO, and ANDREASEN, JJ.

CARTER, Justice.

This case comes to us on appeal from a district court order that surcharged the conservator for the funds he allowed the ward to accumulate for purposes of purchasing five certificates of deposit in joint tenancy with the ward's sister. The sister was not a beneficiary of the ward's will. The conservator was also surcharged for a sixth certificate of deposit that the conservator purchased in the name of the conservatorship and the ward's sister as joint tenants. Because we conclude that the actions in question were a breach of the conservator's fiduciary duty to preserve the ward's estate, we affirm the order of the district court.

Darrell Rininger was the ward under a voluntary conservatorship set up in 1970. Attorney Z.Z. White was the administrator of the conservatorship as well as trustee in this matter until his death in 1980. White's law partner, James Prichard, was substituted as conservator shortly thereafter. Darrell was diagnosed as a paranoid schizophrenic around 1963 and cared for in various institutions from 1967 to 1984. In 1984, Darrell moved back to his hometown of Schaller and remained there until his death in February 1991.

Darrell was given an eighty-acre farm by his mother in 1979. He was in a veteran's home in Kansas at the time. Because of Darrell's condition, White and Prichard determined that it would be best to convey the property to Darrell's children, reserving a life estate in Darrell.

Darrell was also the income beneficiary of a trust created under his father's will. The corpus of this trust was another farm. This trust gave the trustee broad discretion in applying the income from the trust for the benefit and best interests of Darrell. The remainder interest in this trust had been devised to Darrell's two grown children, Douglas and Brenda.

When Darrell returned to the Schaller area in 1984, his twin sister, Darlene, undertook responsibility for his general care. They saw each other daily, and he became very dependent upon his sister. Darrell's son, Douglas, lived in Colorado, and his daughter, Brenda, lived in California. They were not close to their father.

Darlene had been given a life estate in a farm under her father's will, but she suffered substantial financial reverses as a result of guaranteeing loans upon which her sons defaulted during the farm crisis. There was substantial evidence that Darrell wanted to help Darlene with her poor financial situation. On one occasion, he instructed the conservator to write a check on the conservatorship account for medical expenses Darlene had incurred. Prichard did so without seeking court approval. That transaction has not been made part of this litigation.

In 1984, Darrell telephoned Prichard and told him he had saved $1000 from his allowance from the trust. Prichard testified:

And I suggested to him at that time—this first thousand—that when he was—telling me what he had done, I said, well, maybe you might want to put the—this first thousand dollar CD in joint tenancy with your sister. She helps you so much. Maybe you could help her if something would happen to you.

Darrell agreed, and the money was put into a joint tenancy certificate of deposit. Prichard's testimony was inconsistent on the question of his knowledge of the next four $1000 certificates. On direct examination, he stated that he found out after the ward's death that Darrell had purchased four additional certificates of deposit in joint tenancy with Darlene from his living allowance. Yet, when questioned by the court, Prichard stated that he was aware Darrell had been buying those certificates and that he assumed they were in joint tenancy with Darlene. We find that the conservator's knowledge of these transactions has been established.

By 1990, the conservatorship was basically funded by the trust. Prichard testified that he thought it best to take some money out of the trust and to purchase a "certificate of deposit in the conservatorship so it's immediately available if [Darrell should] have to go into a hospital or a nursing home." Prichard suggested the certificate be owned in joint tenancy with Darlene. Darrell agreed. Prichard then transferred $10,000 from the trust to the conservatorship and put this money into a joint certificate of deposit with Darlene. Probate court approval was not sought for this transaction. Prichard kept the certificate in his office safe and a copy was placed in Darrell's safe deposit box.

After Darrell's death in February 1991, Prichard delivered the six certificates of deposit to Darlene. Douglas and Brenda, who owned the remainder interest in the trust, were the beneficiaries of Darrell's will. They objected to the final report and accounting of the conservator, urging that the handling of the six certificates of deposit was a breach of fiduciary responsibility. Following a hearing, the court sustained these objections and ordered that Prichard reimburse Darrell's estate in the sum of $15,629.21, the amount of the six certificates of deposit that had been turned over to Darlene.

On appeal, Prichard urges four reasons why he should not have been surcharged: (1) Darrell had the power and right to purchase the five certificates in joint tenancy, (2) the conservator's purchase of the $10,000 certificate was proper, (3) the certificates were not contrary to Darrell's testamentary intent, and (4) fairness and justice demand a reversal of the district court's order.

I. Under a conservatorship, certain rights and privileges are strictly established by Iowa Code sections 633.633 through 633.679 (1991). Under section 633.637, a ward, regardless of actual competence, does

not have the power to convey, encumber or dispose of property *in any manner*, *other than by will* if the ward possesses the requisite testamentary capacity, *un-less the court determines that the ward has a limited ability to handle the ward's own funds.*

Iowa Code § 633.637 (emphasis added).

Prichard urges that, notwithstanding lack of prior court approval, these transactions should be viewed in retrospect and a finding made that Darrell was able to manage his own funds. In its decision, the district court concluded:

This Court would not have approved the $10,000 May 31, 1990 gift in joint tenancy by Prichard, whether or not Darrell was mentally competent, and, accordingly, it is not prepared at this time to ratify Prichard's conduct.

We agree with this conclusion. We also agree with the court's finding that Prichard's willing complicity in the purchase of the other five certificates of deposit was also a breach of his fiduciary obligation.

As tempting as it may be for us to look favorably upon Darrell's ability to manage his affairs, the issue before us is Prichard's conduct in his fiduciary role. Without securing prior court approval, a ward is not allowed to dispose of property in any manner other than by will. Iowa Code § 633.637. *See In re Fahlin's Guardianship*, 218 Iowa 121, 123, 254 N.W. 296, 297 (1934) (status of ward under voluntary guardianship of property renders ward legally incompetent to direct decisions as to property management). A conservator has a legal obligation to recognize the restrictions that the law places on the ward's authority.

It is the duty of the conservator of the estate to protect and preserve it, to invest it prudently, and to account for it as herein provided, and to perform all other duties required of the conservator by law, and at the termination of the conservatorship, to deliver the assets of the ward to the person entitled thereto.

Iowa Code § 633.641; *In re Guardianship & Conservatorship of Cerven*, 334 N.W.2d 337, 340 (Iowa App.1983).

The fact that the probate court approved the yearly accountings of the conservator, which included these moneys, does not insulate the conservator from lia-

bility under the circumstances that are presented. The purchase money for these six certificates of deposit was reported in those accountings as having been used for Darrell's care and maintenance. The transactions the court was approving were not in fact the transactions that had taken place.

 II. A conservator may not make a gift of conservatorship funds except as authorized in Iowa Code section 633.668.

> For good cause shown and under order of court, a conservator may make gifts on behalf of the ward out of the assets under a conservatorship to persons ... to whom ... such gifts were regularly made prior to the commencement of the conservatorship, or on a showing to the court that such gifts would benefit the ward or the ward's estate from the standpoint of income, gift, estate or inheritances taxes. The making of gifts out of the assets must not foreseeably impair the ability to provide adequately for the best interests of the ward.

This statute expressly requires court approval of such gifts.

 We recognize the practical necessity that a conservator's cash disbursements directly to a ward as a living allowance be used to fund a certain amount of discretionary expenditures. In some situations, those discretionary expenditures might include gifts to relatives in small amounts if appropriate to the occasion and not in conflict with the limitations contained in section 633.637. This tolerance for reasonable discretionary spending does not, however, justify gifts of the size that were made in the present case.

III. The conservator urges that section 633.668 only applies to lifetime gifts and does not limit a transfer that is to take place upon the ward's death if the disposition is consistent with the ward's testamentary intent. We disagree both as to the conservator's authority and the ward's authority. A conservator has no broader authority to act without court approval in making gifts to take effect on the ward's death than to make inter vivos gifts from the ward's estate. The ward's authority to dispose of the ward's estate at death is limited to disposition by will. Iowa Code § 633.637.

IV. Finally, appellant argues that fairness and justice require he not be surcharged because he was only effectuating the ward's wishes. Although the facts of this case do reveal a concerned and caring conservator who believed he was acting in his ward's best interests, the law places very specific and rigid requirements on fiduciaries. In the present case, the probate court determined that it would not have approved the transactions in question had it been requested to do so. Thus, while we do not doubt the conservator's sincerity and good intentions, a breach of fiduciary responsibility on his part was clearly established. The district court's order is affirmed.

**AFFIRMED.**