SHAW, Banking Commissioner, v. McBRIDE
et al.   (No. 3575.)

Court of Civil Appeals of Texas.   Texarkana.
Aug. 8, 1928.

Rehearing Denied Oct. 4, 1928.

Jno. W. Goodwin and Joe T. Goodwin, both of Austin, for appellant.

H. L. Carpenter and Clark, Harrell & Starnes, all of Greenville, for appellees.

HODGES, J.   On June 26, 1926, H. L. Carpenter and W. M. McBride deposited with the People's State Bank of Floyd, Tex., $1,800, and received from the president of the bank the following certificate:

"6/26/1926.          No. 2.

"People's State Bank, Floyd, Texas.

"Certificate of Deposit.

"H. L. Carpenter & W. M. McBride has deposited in this bank eighteen hundred dollars ($1,800.00) payable to the order of H. L. Carpenter & W. M. McBride in current funds on the return of this certificate properly indorsed 4 months after date with interest at 6 per cent. per annum.

"Not subject to check.

"No interest after 4 months.

"H. M. Matthews, President."

Prior to that date the bank had adopted the bond security system for protecting its depositors.   The bank owned $15,000 in United States bonds, which were delivered to the banking commissioner in the manner prescribed by law for securing the bank's depositors.   On October 20, 1926, the bank was closed and placed in the hands of the banking commissioner for liquidation.   In November following the claim of Carpenter and Mc-

Bride was presented for allowance. The commissioner rejected the claim as a charge against the security pledged, but allowed it as a general unsecured debt. This suit was then filed by Carpenter and Mrs. Jane McBride, the independent executrix of the estate of W. M. McBride, in November, 1927. The purpose of the suit is to establish the claim as a charge against the security pledged by the bank for the protection of its depositors. The case was tried before the court without a jury, and a judgment was rendered in favor of the plaintiffs. From that judgment the banking commissioner has appealed.

The controlling question in this case is, Was the transaction upon which the certificate quoted above is based an ordinary commercial loan, or a deposit within the meaning of our statute? The following is a part of the agreed statement of facts:

"That H. L. Carpenter and W. M. McBride, on June 26, 1926, deposited with the People's State Bank of Floyd, Tex., $1,800 and for which said bank, acting by its president, H. M. Matthews, executed and delivered to them the following instrument: [Then follows the certificate.]"

■ Unless that certificate conclusively shows a commercial loan, it cannot be said that the judgment of the court was wrong. In a sense all deposits in banks are loans to the bank, except those classed as special. When general deposits are made, the title to the money passes to the bank, and the relation of debtor and creditor arises between the bank and the depositor; the bank merely owes the depositor a debt equal to the value of the deposit.

While deposits and loans have some characteristics in common, they also have some essential elements which serve to distinguish them. In the case of Kidder v. Hall, 113 Tex. 49, 251 S. W. 497, Chief Justice Cureton said:

"A depositor is one who delivers to or leaves with a bank money, or checks or drafts, the commercial equivalent of money, subject to his order, and by virtue of which action the title to the money passes to the bank."

But in that case the court was not called upon when this deposit was made to distinguish between a loan and a deposit.

Article 392 of our statute, in defining the powers of state banks, provides that they "shall be authorized to conduct the business of receiving money on deposit, allowing interest thereon, and of buying and selling exchange," etc.

When this transaction occurred, state banks were required to protect their depositors by adopting the guaranty fund plan or the bond security system. Article 446 limits the protection of the guaranty fund plan to "all unsecured noninterest-bearing deposits, including cashier's checks, bank drafts or exchange issued against or arising from bona fide unsecured and noninterest-bearing deposits."

Article 475 creates the bond security system and authorizes banks to pledge United States bonds or give other specified form of security at their election. It provides that such security, when given, "shall be for and inure to the benefit of all depositors."

Article 475a provides that such form of indemnity "shall secure" all depositors who are such "at the time said bond is filed and approved and all deposits made during the period of twelve months thereafter."

Article 523 contains the following definition of "deposits":

"Demand deposits, within the meaning of this title, shall comprise all deposits payable within thirty days; and time deposits shall comprise all deposits payable after thirty days, and all savings accounts and certificates of deposit which are subject to not less than thirty days' notice before payment; and a reserve or central reserve city is one defined by the laws of the United States or designated by the Comptroller of the Currency of the United States."

Article 495 provides the form for an official statement of the financial condition of state banks. The following is a part of the prescribed form:

### Liabilities.

| | |
|---|---|
| Capital stock paid in | $——— |
| Surplus fund | ——— |
| Undivided profits, net | ——— |
| Due to banks and bankers, subject to check | ——— |
| Individual deposits subject to check | ——— |
| Time certificates of deposit | ——— |
| Demand certificates of deposit | ——— |
| Cashier's checks | ——— |
| Bills payable and rediscounts | ——— |

■ The following deductions may be drawn from the foregoing and other statutory provisions: (1) That money delivered to a bank may draw interest without destroying the characteristics of a deposit protected by the bond which state banks are required to execute for the benefit of their depositors; and (2) that a deposit may be payable after 30 days without losing that protection. In other words, the security provided for in articles 475 and 475a includes both interest-bearing and time deposits. We may assume that the term "depositors," as used in articles 475 and 475a, was intended by the Legislature to be as broad as the term "deposit" as used in articles 392 and 523.

■■ Whether or not money delivered to a bank is a loan or a deposit depends, of course, upon the nature of the contract under which such delivery is made. While all such transactions create the relation of debtor and creditor, the conditions and terms of repayment are not always the same. When an ordinary commercial loan is made to a bank, a definite time of repayment is either expressed or implied. When that time arrives, the bank is obligated to seek the lender and repay, or tender, the amount due. If it fails to make

such tender, it breaches its contract and becomes liable in damages for interest, whether interest is provided for in the contract or not. But, when money is deposited with a bank, it may retain the money until repayment is demanded by the depositor, or the one for whose benefit the deposit was made. The bank owes no duty in such cases to make a tender of what has been deposited. Hillsinger v. Georgia Railroad Bank, 108 Ga. 357, 33 S. E. 985, 75 Am. St. Rep. 42. It may retain the money indefinitely, unless demand is made, without liability for interest as damages for the wrongful detention of money. Its contract is to hold itself in readiness to repay on demand, and no breach occurs until such demand is made and payment refused. Loans are made for the benefit of the borrower and in consideration of the interest which the borrower agrees to pay. Deposits are made for the convenience of the depositor; and the safe-keeping of the money is the main consideration which he expects to receive for the use which the bank may make of the deposit. In order to protect themselves against unexpected and large demands, banks may contract for advance notice of when repayment will be called for. As a means of enlarging their business of receiving deposits, they may contract to pay interest on deposits. If, as found by the court, the transaction in this instance between the bank and Carpenter and McBride was a deposit, the fact that the contract was reduced to writing in the form of a certificate which provides for interest for a definite length of time does not destroy the essential elements of a deposit.

When analyzed, the certificate issued in this instance shows that Carpenter and McBride delivered the money to the bank as a deposit, that they agreed that the money might remain with the bank as long as four months without a demand for repayment, and that after that time it was payable upon presentation of that certificate properly indorsed. The bank agreed to pay interest on the money received for four months, and no longer. If that transaction was a loan, the money was due at the end of the four months; and, unless payment was then made, the bank would be in default and liable for interest as damages. If the transaction was a deposit, the liability for interest ceased at the end of the four months, regardless of whether payment was then tendered by the bank or not. The word "payable" as used in the certificate does not imply an absolute promise to pay on that date, but that payment might then be demanded by the depositors. The retention of the money by the bank after that date would not, under the terms of the certificate, result in a breach of the contract, but would be a performance of what the bank had agreed to do. The presence of the stipulation against liability for interest after four months indicates that, when the bank received the money, the parties contemplated that it would probably remain with the bank longer than four months and until repayment was demanded.

It is true the certificate stipulates that the deposit is not subject to check; but that fact does not convert the transaction into a loan. Drawing a check against a deposit is only one form of demanding payment. The parties may, if they see proper, agree upon some other form of demand and conditions of payment. Having issued a certificate which was assignable, the requirement that the certificate should be returned and surrendered was evidently intended as a precaution against possible conflicting claims to the deposit.

It is said by some courts that a certificate of deposit in the usual form is, in substance, a promissory note. Undoubtedly such certificates do possess an important feature of promissory notes. Like promissory notes, they are written promises to pay money. But in every general deposit of money with a bank such a promise is either expressed or implied. Reducing the promise to writing in the form of a certificate does not alter the nature of the transaction or transform what the parties intended as a deposit into a commercial loan. State ex rel. Carroll v. Corning State Savings Bank, 136 Iowa, 79, 113 N. W. 500; Elliott, Adm'r, v. Capitol City State Bank, 128 Iowa, 275, 103 N. W. 771, 1 L. R. A. (N. S.) 1130, 111 Am. St. Rep. 198. Banks may borrow money without executing a written promise to pay, and they may receive deposits and state in writing the terms and conditions upon which the repayment shall be made. The true character of the transaction, whether a loan or a deposit, must be determined by what the parties did and agreed to do, not by the fact that they made a record of what they did and agreed to do. When tested by the standards which distinguish a deposit from a loan, we think the facts of this case support the conclusions of the trial judge.

It is contended that the deposit in this instance was not, under the terms of the certificate, payable at the time the bank failed, and for that reason it should now be treated as a loan. That fact is of no material importance in the decision of the question before us. Whether the money was loaned to the bank or was deposited must be determined by the contract entered into when the money was received by the bank, not by what occurred thereafter.

The judgment is affirmed.