### DELANEY v. FARMERS STATE BANK IN MERKEL.

#### No. 1766.

Court of Civil Appeals of Texas. Eastland.

March 4, 1938.

Rehearing Denied April 15, 1938.

commissioner. By contract dated April 14, 1930, duly authorized and confirmed by the district court, as provided by law, the banking commissioner sold and transferred all the assets of said insolvent bank, except stockholders' assessments, to a newly organized banking corporation named Farmers State Bank in Merkel. The consideration for such sale and transfer was the promise and obligation of the new bank "absolutely and at all events to assume, pay off, liquidate and discharge and satisfy all lawful debts, lawful liabilities and lawful claims of all creditors of The Farmers State Bank, excepting, however, any liability of said The Farmers State Bank to its stockholders as such." By way of definition of "liabilities assumed," it was stipulated in the contract that "The liabilities assumed herein by the purchasing bank are in full and shall be so paid without deduction or discount," etc. Included among the depositors of the insolvent bank when taken over for liquidation was Delaney-Delmer Chevrolet Company, of Merkel, Tex., the balance of whose deposit was $5,017.54. On April 15, 1930, Farmers State Bank in Merkel credited to the account of said Delaney-Delmer Chevrolet Company the sum of $4,014.04, in accordance with a charge slip reading as follows:

"Charge Account of Delaney-Delmer Chev. Co.

| | |
|---|---|
| 20% Reduction in Deposits per Agreement ................... | 1,003.50 |
| 80% Credited your Account in New Bank ....................... | 4,014.04 |
| | 5,017.54 |

"The Farmers State Bank in Merkel
"Merkel, Texas, Apr. 15, 1930."

On April 27, 1934, L. A. Delaney, successor to, and owner of, the Delaney-Delmer Chevrolet Company, by attorney, made formal written demand on Farmers State Bank in Merkel for payment of $1,003.50 claimed as a balance due on the liabilities assumed, and agreed to be paid by the bank. Payment being refused, this suit was filed June 23, 1934, by said Delaney to recover of defendant said alleged balance of deposit.

Defendant pleaded the bar of two and four year statutes of limitation, Vernon's Ann.Civ.St. arts. 5526, 5527, and, in addition, pleaded a preorganization agreement of Delaney-Delmer Chevrolet Company to accept a certificate of deposit in the new

Grisham & King, of Abilene, for appellant.

Wagstaff, Harwell, Wagstaff & Douthit, of Abilene, for appellee.

FUNDERBURK, Justice.

The Farmers State Bank of Merkel, Tex., having become insolvent, its assets were, on or about February 17, 1930, taken over for liquidation by the banking

bank, when organized, amounting to 80 per cent. of any amount on deposit in the defunct bank, and that that sum amounting to $4,014.04 had been passed to the credit of said firm and paid, hence defendant was not liable.

The preorganization agreement referred to in the last-named plea of the defendant was in full as follows:

"Merkel, Texas. 3—1—1930

"For the purpose of assisting in the organization of a new bank, which is to take over in part the assets of the Farmers State Bank of Merkel, which has recently closed its doors, I agree to accept a certificate of deposit in the new bank when organized for eighty per cent of the amount of my deposit in the Farmers State Bank of Merkel, now in liquidation, and to look to the assets of the Farmers State Bank of Merkel, now in liquidation, for the payment of or part payment of the remaining twenty per cent of my deposit after the new bank has taken over such assets of the Farmers State Bank of Merkel that are necessary in the organization of the new bank for the purpose of paying the eighty per cent so deposited in said new bank, and such other necessary matters in connection with the new organization, including payment of depositors under $100.00.

"I also agree that all depositors in the Farmers State Bank of Merkel, who have less than $100.00 on deposit, may be taken over by the new bank in full, and I also agree that this agreement is binding upon me when those holding ninety-five per cent of the deposits in Farmers State Bank of Merkel have signed a similar agreement to this, by which the new bank takes over eighty per cent of the deposits of those so signing.

"After the organization of the new bank is provided for, the remaining assets of the Farmers State Bank of Merkel will be used as a fund to liquidate the remaining twenty per cent of the deposits in Farmers State Bank of Merkel so far as it will go.

"In the reorganization of new bank consent is given to those handling the remaining assets to pledge the real estate, not taken over by the new bank, to secure any banks taking over not to exceed $40,000.00 of notes of the new bank that such banks will not lose anything by reason of taking over such paper. I also agree that the receiver of the Farmers State Bank of Merkel, Texas, may transfer the remaining assets to A. T. Sheppard, W. O. Boney, and M. Armstrong to

handle for the depositors as above provided for.

"[Signed]   Delaney-Delmer Chev. Co.
                    "By C. W. Delmer."

In a nonjury trial the court gave judgment for the defendant, from which the plaintiff has appealed. Conclusions of fact and of law were duly filed.

■ The first ground of error presented for review is the action of the court in finding that all of the assets did not become the assets of the new bank. It is contended that the undisputed evidence showed that in the sale by the banking commissioner all of the assets of the bank, except the stockholders' assessments, became the property of the new bank. The contract was in writing and in evidence. In the contract as well as all the proceedings to give it effect, it was plainly stated, and several times repeated, that *all* the assets, except the stockholders' assessments, were sold and transferred to the new bank. No issue was tendered by the pleadings of either party as a basis for avoidance or reformation to the effect that the written contract did not express the true agreement. The contract was unambiguous as to the assets conveyed and those excepted from the conveyance. There was, therefore, no competent evidence upon this particular point outside of the written contract. The conclusion seems irresistible that, in accordance with plaintiff's contention, the undisputed evidence did show that in the sale by the banking commissioner all the assets of the bank, except the stockholders' assessments, became the property of the new bank.

Although merely cumulative of the otherwise conclusive evidence upon the point, the next day after the assets were transferred to defendant, the latter transferred the very assets in question, identified in the findings by reference to same as the "20% fund," to certain trustees, and in the contract of transfer referring to such assets recited "which assets were transferred to Farmers State Bank in Merkel." We sustain the first assignment of error.

By the second assignment of error the point is made that the trial judge in finding that a certain clause in the contract by which the assets of the insolvent bank were sold and transferred by the banking commissioner to the defendant, reading "in accordance with the terms and provisions of the original contracts, agreements and undertakings between said the Farmers State

Bank and its depositors, creditors and other claimants," thereby "meant and was intended to mean that the new bank was assuming the obligations as set out in the special agreement dated March 1, 1930," was erroneous because "the undisputed evidence in the record shows that this was not the meaning of said clause in said contract, but was the court's interpretation of the meaning and this finding of fact was really not a finding of fact but a conclusion of law."

■ The preceding discussion dealing with the first assignment of error is also applicable upon this point. The plain and unambiguous provisions of the contract itself established the assumption by the new bank of all the liabilities of the insolvent bank just as conclusively as it established the conveyance of all assets with the one express exception stated, and for the same reason. The question here may be stated abstractly thus: Can a reference in a contract to another agreement, as being one in accordance with which the obligations of the contract are imposed, be given the effect of contradicting or varying the express specific provisions of the contract? The entire sentence in which the clause in question occurs was as follows: "The liabilities assumed herein by the purchasing bank are *in full* and *shall be so paid without deduction or discount,* and in accordance with the terms and provisions of the original contracts, agreements and undertakings between said the Farmers State Bank and its depositors, creditors and other lawful claimants above referred to." (Italics ours.) The conclusion of the learned trial judge was that the language "in accordance with the terms and provisions of the original contracts, agreements and undertakings," etc., referred to said agreement of March 1, 1930 (set out in the above statement of the case), and had the effect of obligating the defendant to assume and pay only 80 per cent. of the deposit of plaintiff's firm. It could only have such effect, it seems to us, by contradicting and nullifying the obligation specifically expressed in the contract, and, in the very same connection, to assume and pay all liabilities in full "without deduction or discount." Another agreement may be referred to, in a contract to supply that which is not expressed in the contract, or for details of that only generally expressed, or matters uncertainly expressed, but we are of the opinion there can be no logical support for a proposition that a mere general reference in a contract

to another agreement as being in accord with the contract may be given the effect of completely substituting provisions in the agreement so referred to for the specifically expressed provisions of the contract.

The finding is also challenged that "when the defendant herein was organized there was deposited in it on April 15, 1930, to Delaney-Delmer Chev. Co. the sum of $4014.04." It is insisted that the "undisputed evidence shows that upon the close of business of the old bank that plaintiff had on deposit the sum of $5017.54 and that the new bank assumed the payment of all of said deposit." This is supported by the finding of the amount of the deposit in the old bank. What we have already said would seem to conclude this question also. There was no evidence that plaintiff or his said firm made any deposit in defendant bank as distinct from the deposit in the old bank. In pursuance of defendant's assumption of all liabilities of the insolvent bank, and its agreement to pay same "without deduction or discount," it opened up on its books an account with said firm of Delaney-Delmer Chevrolet Company and credited to them as depositor the sum of $4,014.04, being 80 per cent. of the deposit of $5,017.54 in the insolvent bank, indicating by the charge slip the remaining 20 per cent. as follows: "20% reduction in deposit per agreement— $1,003.50." Our conclusions already stated preclude any other view than that the amount of defendant's liability upon its assumption and agreement to pay liabilities to depositors was the total sum of $5,017.54 and not $4,014.04.

■ Lastly, we are of the opinion that plaintiff's claim for the unpaid balance of the total liability of $5,017.54, being the amount sued for, of $1,003.50, was not barred by the two or four year statutes of limitation. The balance of the deposit in the old bank became, in legal effect, the amount of the deposit in the defendant bank. The deposit in the old bank was a general one. Its character was not changed in the new bank. By the contract of assumption and agreement to pay the depositors made by defendant with the banking commissioner, as statutory agent and receiver for and of the insolvent bank, such contract was in part made for the benefit of the depositors. The relation between bank and general depositor arose between the plaintiff and defendant. Such relation involves the liability of the bank to pay the depositor, *upon demand.* No cause of action existed to recover the

balance claimed on the deposit before demand. First State Bank v. Shannon, Tex. Civ.App., 159 S.W. 398; Farmers' Nat. Bank v. Wallace & Co., Tex.Civ.App., 263 S.W. 1105; Shaw v. McBride, Tex.Civ. App., 9 S.W.2d 410. For application of the principle, see Yeaman v. Galveston City Co., 106 Tex. 389, 167 S.W. 710, Ann.Cas.1917E, 191. Limitation began to run after demand, and the suit was brought but a short time later, and less than two years after the demand.

That a contract between parties made in whole or particular part for the benefit of a third party may be enforced by such third party as to the obligations so created in his favor is a proposition so well recognized that it is not deemed necessary to discuss it. 10 Tex.Jur. p. 478, § 278. Typical of such contract rights of one in a contract to which he is not a party made by others are those like the one here where one of the contracting parties engages to assume and pay a debt owing by the other contracting parties to a third person. Id. p. 480, § 279.

We might well end the discussion here, but deem it advisable to comment briefly upon the agreement relied upon by the defendant to absolve it from the obligation to pay the balance of the deposit claimed. It is difficult to discern in the terms and general purport of the instrument evidencing that agreement the essential elements of a contract, especially as between the parties to this suit. Bearing in mind the definition of Williston that "A contract is a promise, or set of promises, to which the law attaches legal obligation" (Williston on Contracts, vol. 1, p. 1, § 1), the questions are suggested: Who were the parties to the contract? To whom were the promises made? Was there any consideration sufficient to make of the agreement, a contract? No very satisfactory answers to these questions appear from a reading of the agreement. The instrument may perhaps be more plausibly supported by regarding it as an offer and not in itself a completed contract. But even if so, to whom was the offer made? Certain individuals desirous of organizing a new bank? The new bank itself? Precisely, what was understood as constituting an acceptance of the offer? Defendant's pleadings refer to the agreement as having "been entered into between said partnership and the *parties reorganizing said institution* as a new bank *and other depositors.*" (Italics ours.) The terms of the agreement were not specifically pleaded by the defendant. The defendant in response to a most general plea seems to have regarded the agreement simply as evidence, deemed by it to be conclusive against plaintiff of his asserted right to the balance of the deposit. As said before, it could not be given such effect as against the specific provisions of the later contract upon which plaintiff grounds his claim.

The agreement shows that it was contemplated the new bank was "to take over in part the assets of the Farmers State Bank of Merkel." That the "part" not to be taken over did not refer to the excepted stockholders' assessments is shown by the further recitation that "such assets" were those "that are necessary in the organization of the new bank for the purpose of paying the 80 per cent so deposited in said new bank," and that "the remaining assets of the Farmers State Bank of Merkel will be used as a fund to liquidate the remaining 20 per cent of the deposits in the Farmers State Bank of Merkel so far as it will go." That the agreement contemplated there were assets other than stockholders' assessments not to be transferred to the new bank is further shown by the provision that "consent is given to those handling the remaining assets to pledge the real estate *not taken over by the new bank to* secure any banks taking over not to exceed $40,000 of notes of the new bank that such banks will not lose anything by reason of taking over such paper." To the same effect, but even more certainly showing that it was contemplated that assets other than those expressly excepted were not to be transferred to the new bank, is the further provision showing the consent of the signer "that the *receiver* of the Farmers State Bank of Merkel, Texas, may transfer the *remaining assets* to A. T. Sheppard, W. O. Beney and M. Armstrong to handle for the depositors as above provided for." (Italics ours.)

R. O. Anderson, one of the organizers of the defendant bank, and vice president of the old bank, was asked: "Did the Commissioner agree to the sale of those assets upon any other condition than that the new bank assume the payment of all the debts, except stockholders' liability?" He answered: "They required the new bank to assume all liability with the exception of the stockholders' liability. Q. Did the Banking Commissioner, as provided for in that contract, ever make any transfer to those trus-

tees? A. I think not. It was between the trustees and the new bank."

It thus appears the transaction finally consummated and evidenced by the written contract between the banking commissioner and defendant was somewhat different from that contemplated in the agreement signed by Delaney-Delmer Chevrolet Company. The rule that prior tentative oral agreements and negotiations are superseded by a written contract is not a rule applicable exclusively to oral transactions. It applies to written matters, as well. At least, and certainly so, as to matters in conflict. A clear case seems to us to be presented of a written contract which may not have expressed the intention which at least some of the parties intended that it express, but the intention which it does express excludes that which may have been intended to be expressed. Such is the kind of situation wherein the remedy is to invoke the equitable powers of the court to reform a contract to make it express the intention of the parties.

It is our conclusion that the judgment of the court below should be reversed and judgment rendered for the plaintiff to the effect that he have and recover of the defendant the said sum of $1,003.50, with interest thereon at the rate of 6 per cent. from the 27th day of April, 1934, and costs of suit, including costs of this appeal. It is accordingly so ordered.

## On Rehearing.

In deference to the earnestness with which the eminent senior counsel for appellee insists we have erred in our decision, and because of the very high regard all members of this court entertain for his great legal ability and uniform sincerity in the advocacy of any position taken, particularly when so vigorously asserted as in the motion for rehearing, we feel impelled to make some further brief observations in disposing of the motion.

Our conclusion that the assumption by appellee of the liabilities of the insolvent bank had the effect in law of making the deposit of $5017.54 of appellant in the old bank a general deposit of like amount in the new bank is most vigorously challenged. One or more definitions of "depositor" and "deposit" are quoted to enforce the argument that appellant could not, perforce of the contract between the banking commissioner and the new bank, have

become a general depositor in said new bank. Corpus Juris is quoted thus: "A general deposit which is the ordinary form is the payment of money into the bank to be repaid on demand, in whole or in part, as called for in any current money." 7 C.J. p. 628, § 305. Also, this quotation from 7 Am.Jur. p. 292, § 418: "A general deposit consists in a delivery of money or funds into the possession of the bank, whose property the deposit becomes, in return for which the depositor receives a credit of the amount represented by the deposit, against which credit the depositor may draw in the usual course of the bank's business." It is insisted that in every case cited in the opinion "that a depositor passed money into the bank or passed a check which was cashed." It seems to us that, if the question is to be determined by the literal terms of the definition, then we would have to say that no depositor of any amount in the old bank became a depositor of any amount in the new bank. No money or funds changed hands. No depositor of the old bank personally, or by any one for him, passed any amount of money or funds into the new bank. But, could it be said that to the extent of the deposits assumed the old depositors were not depositors in the new bank? We think not. When appellant made the deposit in the old bank, what was the nature of the contract between the depositor and the bank? It was undoubtedly a general deposit. The relation of banker and depositor arose. The contract obligation of the bank was to pay upon demand. The contract of assumption bound the purchasing bank not only to pay "without deduction or discount," but "in accordance with the terms and provisions of the original contracts, agreements and undertakings between said The Farmers State Bank and its depositors," etc. Could there be any more express and specific assumption not only of the obligation to pay the amount, but to pay *in accordance with the contract by which the deposit was made in the old bank?*

Suppose a depositor in the old bank of, say, $2,000, by a mistake of bookkeeping, was credited with only $1,000, and when the new bank was organized the latter credited such former depositor with 80 per cent. of $1,000. Can it be said that such depositor in the old bank became a depositor of only $800 in the new bank, payable on demand, but the remaining $1,200 was not payable under the same terms? If a mere matter of bookkeeping on the part of either

bank, not assented to by the depositor, can be controlling as to the amount of the deposit, then it seems there was little virtue in the requirement of the banking commissioner that the assumption of deposits be in full. It seems to us the more reasonable view, and in fact the only one that could give effect to the contract made for the benefit of the depositors of the old bank, would be that the original contracts remained in force having the same nature and effect as before, with the single exception that the new bank was substituted for the old bank. Under this view, if a depositor in the old bank was a special depositor, he remained so. If he was a general creditor whose claim became due upon a certain specified date, the obligation remained one due on that date. If he was a general depositor and the obligation of the bank was to pay on demand, the obligation of the new bank was to pay on demand.

Under any other view, as we see it, the obligation to assume and pay in full without discount would not be as the contract required, that is, "in accordance with the terms and provisions of the original contracts, agreements and undertakings between" the old bank and its "depositors."

It is therefore our conclusion that the motion for rehearing should be overruled, and it is accordingly so ordered.