FARMERS STATE BANK IN MERKEL V. L. A. DELANEY.

No. 7426. Decided December 6, 1939.
(133 S. W., 2d Series, 757.)

*Wagstaff, Harwell, Wagstaff & Douhitt,* of Abilene, for plaintiff in error.

The undisputed evidence being that the Farmers State Bank of Merkel, in which defendant in error had a general deposit of $5,017.54, went into liquidation in February, 1930, and it therefore became due and payable to the Receiver of said Bank—the State Banking Commissioner, and the undisputed evidence further shows that the Farmers State Bank in Merkel was not organized until April 15, 1930, and that the assumption of the liabilities of the old bank was not until said date, the said assumption by the new bank did not create the relation of general depositor between the defendant and plaintiff, except as to such fund which the new bank placed in its bank to the credit of plaintiff. Kidder v. Hall, 113 Texas 49, 251 S. W. 497; 7 Am. Jur. 287; 7 C. J. 628,664; 6 Tex. Jur. 229.

*Grisham & King,* of Abilene, for defendant in error.

On a general bank deposit the statute of limitations begin to run when demand is made for payment and a refusal is made. Shaw v. McBride, 9 S. W. (2d) 410; Farmers' Natl. Bank. v. Wallace, 263 S. W. 1105.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

The Farmers State Bank of Merkel, having become insolvent, was on February 17, 1930, taken over by the Banking Commissioner for liquidation. By contract dated April 14, 1930, duly authorized and approved by the district court in the manner provided by law, sale of assets of the old bank was made to a new bank, organized under the name of Farmers State Bank in Merkel. Prior to the formal organization of the new bank, those who contemplated such organization prepared a preorganization agreement, which was presented to practically all of the creditors of the old bank, and was signed by them. Delaney-Delmer Chevrolet Company had on deposit with the old bank at the time it was closed the sum of $5017.54. As such depositor, it signed the agreement mentioned, which read as follows:

"For the purpose of assisting in the organization of a new bank, which is to take over in part the assets of the Farmers State Bank of Merkel, which has recently closed its doors, I agree to accept a certificate of deposit in the new bank when organized for eighty per cent of the amount of my deposit in the Farmers State Bank of Merkel, now in liquidation, and to look to the assets of the Farmers State Bank of Merkel,

now in liquidation, for the payment of or part payment of the remaining twenty per cent of my deposit after the new bank has taken over such assets of the Farmers State Bank of Merkel that are necessary in the organization of the new bank for the purpose of paying the eighty per cent so deposited in said new bank, and such other necessary matters in connection with the new organization, including payment of depositors under $100.00.

"I also agree that all depositors in the Farmers State Bank of Merkel, who have less than $100.00 on deposit, may be taken over by the new bank in full, and I also agree that this agreement is binding upon me when those holding ninety-five per cent of the deposits in Farmers State Bank of Merkel have signed a similar agreement to this, by which the new bank takes over eighty per cent of the deposits of those so signing.

"After the organization of the new bank is provided for, the remaining assets of the Farmers State Bank of Merkel will be used as a fund to liquidate the remaining twenty per cent of the deposits in Farmers State Bank of Merkel so far as it will go.

"In the reorganization of new bank consent is given to those handling the remaining assets to pledge the real estate, not taken over by the new bank, to secure any banks taking over not to exceed $40,000.00 of notes of the new bank that such banks will not lose anything by reason of taking over such paper. I also agree that the receiver of the Farmers State Bank of Merkel, Texas, may transfer the remaining assets to A. T. Sheppard, W. O. Boney, and M. Armstrong to handle for the depositors as above provided for."

As will be noted, this agreement was dated March 1, 1930, but the sale of the assets to the new bank was not consummated until about April 14, 1930. On April 15, 1930, the new bank credited Delaney-Delmer Chevrolet Company on its books with $4014.04, and furnished it with a deposit slip reading as follows:

"Charge Account of Delaney-Delmer Chev. Co.
20% Reduction in Deposits per Agreement_____ 1,003.50
"80% Credited your Account in New Bank_____ 4,014.04

5,017.54

"The Farmers State Bank in Merkel
"Merkel, Texas, Apr. 15, 1930."

Thereafter, Delaney-Delmer Chevrolet Company, in the due

course of business, checked out of said bank the said sum of $4,014.04.

Also on April 15, 1930, the new bank, in pursuance of proper authority from its Board of Directors, transferred and assigned to W. O. Boney, M. Armstrong and A. T. Sheppard, Trustees, certain lands, bills receivable and other assets assigned to the bank the day before, which said trustees were to "administer for the benefit of those depositors of the Farmers State Bank of Merkel, who received only eighty per cent of their money on deposit in the old bank." It is undisputed that these assets, aggregating a book value of $54,340.84, which were known as the "20% Fund," were thereafter administered solely for the benefit of the depositors who had signed agreements similar to the one above set out.

On April 27, 1934, L. A. Delaney, successor to Delaney-Delmer Chevrolet Company, made demand upon the bank for the balance of $1003.50. This demand was refused, and the present suit followed. Delaney was plaintiff, and will be designated as such here. Farmers State Bank in Merkel was defendant, and will be so referred to in this opinion.

Plaintiff bottoms his case entirely upon the clause of assumption in the contract by which the assets of the old bank were taken over by the new bank. So far as pertinent, that provision is as follows:

"The Purchasing Bank binds itself absolutely and at all events to assume, pay off, liquidate, and discharge and satisfy all lawful debts, lawful liabilities and lawful claims of all creditors of The Farmers State Bank, excepting, however, any liability of said The Farmers State Bank to its stockholders as such.

"The liabilities assumed herein by the Purchasing Bank are in full and shall be so paid without deduction or discount, and in accordance with the terms and provisions of the original contracts, agreements and undertakings between said The Farmers State Bank and its depositors, creditors and other lawful claimants above referred to."

Although relying upon this contractual obligation, nevertheless, in order to avoid the bar of the statutes of limitations, plaintiff takes the further position: That by virtue of the taking over of the assets of the old bank, by the new bank, and the assumption to pay its debts, he, upon organization of the new bank, became a general depositor therein to the amount of $5,017.54; and being a general depositor, limi-

tation would not begin to run until after demand upon the bank for the balance of the $1003.50.

The case was tried before the court without a jury and the court filed findings of fact and conclusions of law. Judgment was in favor of defendant. Among other things, the trial court found that because of the agreement above set out and the practical construction thereof by the parties, plaintiff never became a depositor in the new bank as to said sum of $1003.50, being the 20 per cent of the former deposit which was to be paid out of assets which the bank never in fact acquired, but which were administered by the trustees mentioned. In this connection a contention is made that the trial court was in error in finding that all of the assets of the old bank were not in fact acquired by the new bank. Technically such contention may be correct, but in reality the finding of the court is true. It will be noted that the agreement of March 1, 1930, provided that the reserved assets were to be conveyed by the "receiver" of the old bank to the named trustees. There was in fact no receiver, other than the Commissioner of Banking, and while all the assets were formally transferred by him to the new bank, it on the next day executed conveyance to the trustees named in the agreement. Thus it will be seen that the bank in reality became only the instrumentality through which title to these assets passed to the trustees. It is recited in said assignment that it was with the consent of the Commissioner of Banking.

The Court of Civil Appeals reversed the judgment of the trial court and rendered judgment in favor of plaintiff. 115 S. W. (2d) 736.

We do not find it necessary to discuss any of the matters discussed by the Court of Civil Appeals. Although the judgment of the trial court could perhaps be upheld on other grounds, yet we think that court settled the case by the following conclusion: "I conclude, as a matter of law, that the plaintiff is bound by this contract dated March 1, 1930, and that all parts of said contract have been complied with; and that he is not entitled to recover the 20% in any event."

Plaintiff does not deny making the contract on March 1, 1930. There was not a single assignment in the Court of Civil Appeals attacking the validity of this agreement. Even if it may not have been a binding contract at the time it was signed, it became valid when accepted by the new bank and acted upon in the manner indicated. The only assignment which

even suggests that it was unenforceable was one which contends that it was inconsistent with the contract of assignment made by the Commissioner of Banking. We see no inconsistency at all between the two contracts. They are entirely independent. The one deals with assignment of the assets of the bank, while the other relates to the status which plaintiff's deposit in the new bank was to assume, and the manner in which it was to be paid. This contract was voluntarily made. There is no complaint that it was illegal, or without consideration, or the result of fraud, accident, or mistake. We see no reason whatever why plaintiff should not abide by this contract; especially after it has been accepted by the bank, complied with by it, and acquiesced in for more than four years. While no authorities are necessary, yet we think the case of Dobbs v. Peoples State Bank, 265 Ky. 117, 95 S. W. (2d) 1111, is to some extent, in principle, pertinent.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

Opinion adopted by the Supreme Court December 6, 1939.